**EXHIBIT "B"**

Electronically FILED by Superior Court of California, County of Los Angeles on 11/18/2019 08:35 PM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Boyadzhyan,Deputy Clerk

**JOHN G. BURGEE, ESQ. (State Bar No. 132129)**
**BURGEE & ABRAMOFF, P.C.**
20501 Ventura Boulevard, Suite 262
Woodland Hills, California 91364
Tel: (818) 264-7575
Fax: (818) 264-7576

Attorneys for Defendants RUVIN FEYGENBERG,
MICHAEL LEIZEROVITZ and SENSIBLE
CONSULTING AND MANAGEMENT, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

NORTHWEST DISTRICT

| | |
|---|---|
| LEV INVESTMENTS, LLC, | CASE NO. 19VECV00878 |
| Plaintiff, | CROSS-COMPLAINT OF RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ AND SENSIBLE CONSULTING AND MANAGEMENT, INC. FOR DAMAGES AND EQUITABLE RELIEF: |
| v. | |
| RUVIN FEYGENBERG, et al., | |
| Defendants. | 1. BREACH OF CONTRACT |
| | 2. BREACH OF FIDUCIARY DUTY |
| RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ, and SENSIBLE CONSULTING AND MANAGEMENT, INC. | 3. CONCEALMENT |
| | 4. INDEMNITY |
| | 5. DECLARATORY RELIEF |
| | 6. QUIET TITLE |
| | 7. CANCELLATION OF INSTRUMENTS |
| | 8. WRONGFUL FORECLOSURE |
| Cross-Complainants, | 9. DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| LEV INVESTMENTS, LLC, DMITRI LIOUDKOVSKI (aka Dmitri Ludkovski), YEVGENIYA LISITSA (aka Y. GINA LISITSA), LISITSA LAW, INC., REAL PROPERTY TRUSTEE, INC., MIKE KEMEL, and ROES 1 to 50, | |
| Cross-Defendants. | |

Cross-Complainants RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ, and SENSIBLE

CONSULTING AND MANAGEMENT, INC. allege:

1

CROSS-COMPLAINT

**PARTIES**

1. Cross-Complainants RUVIN FEYGENBERG and MICHAEL LEIZEROVITZ are individuals who reside in the State of California.

2. Cross-Complainant SENSIBLE CONSULTING AND MANAGEMENT, INC. ("SENSIBLE") is, and was at all times material hereto, a corporation organized and existing under the laws of the State of California.

3. Cross-Defendants DMITRI LIOUDKOVSKI (also known as Dmitri Ludkovski), YEVGENIYA LISITSA (also known as Y. GINA LISITSA), and MIKE KEMEL are individuals who conducts business in Southern California and the County of Los Angeles.  Cross-Defendants are informed and believe and thereon allege that LIOUSKOVSKI, LISITSA and KEMEL also maintain residences in the County of Los Angeles, State of California.

4. Cross-Defendant LEV INVESTMENTS, LLC ("LEV") is, and was at all times material hereto, a limited liability company organized and existing under the laws of the State of California.  LIOUDKOVSKI is the sole manager and principal of LEV.

5. Cross-Defendant LISITSA LAW, INC. is and was at times material hereto, a corporation organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Cross-Complainants are informed and believe and thereon allege that LISITSA is and was a shareholder, director and/or officer of LISITSA LAW, INC., and that LISITSA LAW, INC. is LISITSA's law corporation.  (LISITSA and LISITSA LAW, INC. are collectively referred to herein as the "LISITSA PARTIES.")

6. Cross-Defendant REAL PROPERTY TRUSTEE, INC. (the "TRUSTEE") is, and was at all times material hereto, a Delaware corporation doing business in the County of Los Angeles, and it is currently qualified to do business in the State of California.  Cross-Complainants are informed and believe and thereon allege that KEMEL is the sole officer, director and principal of RPT.

7. The names and capacities, whether individual, corporate, associate or otherwise, of Cross-Defendants named herein as ROES 1 to 50, inclusive, are unknown to Cross-Complainants, who therefore sue such Cross-Defendants by such fictitious names.  Cross-Complainants will amend

2

1  this Cross-Complaint when the true names and capacities of such Cross-Defendants have been

2  ascertained.  Cross-Complainants further allege that each such Cross-Defendant is responsible in

3  some manner for the actions alleged herein and further for the damages suffered by Cross-

4  Complainants.

5        8.    Cross-Complainants are informed and believe and thereon allege that there exists,

6  and at all times relevant herein there existed, a unity of interest and ownership between Cross-

7  Defendants LIOUDKOVSKI, LEV and ROES 1 to 10 (collectively the "LEV PARTIES"), such that

8  any individuality and separateness between these parties has ceased.  Additionally, Cross-

9  Complainants are informed and believe and thereon allege that LEV and ROES 1 to 5 are

10  undercapitalized, failed to observe corporate formalities, are mere shell entities, and/or are

11  instrumentalities of LIOUDKOVSKI and ROES 6 to 10.  Cross-Complainants therefore are

12  informed and believe and thereon allege that the LEV PARTIES are the alter egos of each other and

13  it would be unjust not to hold each of these parties liable for the claims against any of the other

14  parties alleged herein.

15        9.    Cross-Complainants are informed and believe and thereon allege that there exists,

16  and at all times relevant herein there existed, a unity of interest and ownership between Cross-

17  Defendants KEMEL, RPT and ROES 11 to 20 (collectively the "RPT PARTIES"), such that any

18  individuality and separateness between these parties has ceased.  Additionally, Cross-Complainants

19  are informed and believe and thereon allege that RPT and ROES 11 to 15 are undercapitalized,

20  failed to observe corporate formalities, are mere shell entities, and/or are instrumentalities of

21  KEMEL and ROES 16 to 20.  Cross-Complainants therefore are informed and believe and thereon

22  allege that the RPT PARTIES are the alter egos of each other and it would be unjust not to hold

23  each of these parties liable for the claims against any of the other parties alleged herein.

24  **GENERAL ALLEGATIONS**

25        10.    In or about December 2018, FEYGENBERG and LEIZEROVITZ entered into a

26  business transaction with LEV for LEV's acquisition of a real property located in Sherman Oaks,

27  California consisting of a single-family dwelling (the "Property").  The parties' plan was to purchase

28  a defaulted Promissory Note secured by a first position Deed of Trust for the Property which was in

CROSS-COMPLAINT

the process of being foreclosed, and to complete the non-judicial foreclosure in order for LEV to obtain title to the Property. FEYGENBERG's and LEIZEROVITZ's role in the transaction was principally to act as lenders who were initially secured by having an interest in the purchased Note and after foreclosure, were to be secured by a first-position lien against the Property. Pursuant the principal written agreement among the parties for this venture, which was prepared by LISITSA (the "CONTRACT"), LEV was supposed to contribute $1,022,500 to the purchase of the Note and Deed of Trust. The LISITSA PARTIES acted as counsel for all parties to the CONTRACT.

11.    Unbeknownst to FEYGENBERG and LEIZEROVITZ, LIOUDKOVSKI was making secret deals with others to obtain the funds LEV needed to contribute to the purchase of the Note and Deed of Trust (the "Secret Loans"). LIOUDKOVSKI purported to make these deals on behalf of LEV, FEYGENBERG and LEIZEROVITZ, even though FEYGENBERG and LEIZEROVITZ never gave LIOUDKOVSKI authority to do so and were unaware of the deals he was making. Cross-Complainants are informed and believe and thereon allege that in order to obtain funds from third parties, LIOUDKOVSKI promised them first-position liens on the Property. LIOUDKOVSKI obtained an unknown amount of funds from the third parties in this manner. Cross-Complainants are informed and believe and thereon allege that one of the third parties that provided funds to LEV based upon LIOUDKOVSKI's promise of a first-position lien against the Property was a relative of LISITSA and that the LISITSA PARTIES were aware of these Secret Loans obtained by LIOUDKOVSKI for LEV.

12.    LEV, FEYGENBERG and LEIZEROVITZ acquired the defaulted Promissory Note on or about December 31, 2018. During the next month, the owner of the Property engaged in legal actions in both the Superior Court and the Bankruptcy Court to try to derail the foreclosure. LISITSA represented Lev, FEYGENBERG and LEIZEROVITZ as counsel of record in these legal proceedings . Since they were principally acting as lenders, FEYGENBERG and LEIZEROVITZ never agreed, expected or were told that they would be responsible for any attorneys fees or legal costs incurred in order to proceed with the foreclosure. Nonetheless, they were charged in excess of $24,000 for their share of Defendants' attorneys fees for these court proceedings. FEYGENBERG and LEIZEROVITZ  reluctantly accepted that they were being charged for the LISITSA PARTIES'

1  attorneys fees based upon the understanding and expectation that, as lenders, they would ultimately

2  be reimbursed for costs and expenses related to their loan when the loan was paid-off.

3      13.      The foreclosure sale of the Property occurred on January 30, 2019.  Although the

4  Property was sold based upon a credit bid of the amount due on the Promissory Note, the sale did

5  not proceed as agreed by FEYGENBERG, LEIZEROVITZ and LEV.  Despite the agreement that

6  only LEV would take title to the Property and that FEYGENBERG and LEIZEROVITZ would be

7  provided with a first-position Deed of Trust as soon as the foreclosure occurred, the Trustee

8  conducting the foreclosure sale under the direction and supervision of the LEV PARTIES and

9  LISITSA, issued a Trustee's Deed naming LEV,  FEYGENBERG and LEIZEROVITZ jointly as

10  owners of the Property.  Realizing this mistake, LISITSA prepared a Grant Deed to divest

11  FEYGENBERG and LEIZEROVITZ of ownership of the Property and a Deed of Trust to secure

12  FEYGENBERG's and LEIZEROVITZ's loan as a lien against the Property.   (LEIZEROVITZ

13  assigned his loan to SENSIBLE, his business entity, which became a beneficiary of the Deed of

14  Trust with FEYGENBERG which the Deed of Trust was prepared by LISITSA.)  These documents

15  were executed on January 31, 2019, just one day after the Trustee's sale.  However, the LISITSA

16  PARTIES, who had possession of these instruments, acting at the direction and in concert with the

17  LEV Parties, did not record them until March 22, 2019, after many demands from Cross-

18  Complainants for copies of the recorded documents.

19      14.      In early March 2019, before the Grant Deed and Deed of Trust were recorded to try

20  to conform to the parties' agreement, LEV acting through the LISITSA PARTIES asked Cross-

21  Complainants to provide a pay-off demand for their loan in connection with an escrow for a

22  purported sale of the Property.  In connection with that transaction, Cross-Complainants were told

23  that there was a "problem" with the title to the Property.  That "problem" turned out to be a

24  judgment lien against FEYGENBERG for an old lawsuit that FEYGENBERG believed had been

25  settled and dismissed.  Unbeknownst to FEYGENBERG, the claims against him were not dismissed

26  and a judgment was entered against him for $169,855.38.  This "problem" would have never arisen

27  if the foreclosure on the Property had been handled as agreed where FEYGENBERG would never

28  have been named as a title holder of the Property.  Based upon this "problem", LEV, through its

agents, has demanded that SENSIBLE, which had become the sole holder of the loan initially made by FEYGENBERG and LEIZEROVITZ, agree to a payoff of the loan that is reduced by the amount of the judgment.  When SENSIBLE refused to do so, LEV brought this  action against Cross-Complainants seeking compensation not only for the judgment, but also other for other undisclosed liens against the Property that they supposedly caused.  These claims are based in part upon the execution of a Grant Deed by LEIZEROVITZ and FEYGENBERG to convey the interest that they improperly had in the Property to LEV.

15.    In October 2019, Cross-Complainants first learned about the Secret Loans when they received notice of a lawsuit brought by Mariya Ayzenberg.  Ms. Ayzenberg alleged that she made a $300,000 loan to LEV and Cross-Defendants, and that her loan was supposed to be secured by a Deed of Trust for the Property.  She recorded a Notice of Pendency of Action against the Property clouding title.  Prior to this time, Cross-Complainants had no idea that Ms. Ayzenberg had purportedly loaned any money to LEV related to the acquisition of the Property.

16.    In December 2019, Cross-Complainants learned about another Secret Loan when they received notice of another lawsuit brought against LEV and them, alleging that they borrowed $119,000 from an undisclosed principal for the acquisition of the Property. (The lawsuit was brought by FR LLC as an assignee of the Secret Loan.)  The plaintiff alleged that the loan was supposed to be secured by a first position Deed of Trust for the Property and, according to the court docket, the plaintiff recorded a Notice of Pending Action.  Prior to this time, Cross-Complainants was not aware of this purported loan to LEV related to the acquisition of the Property.

## FIRST CAUSE OF ACTION

(By All Cross-Complainants for Breach of Contract against the LEV PARTIES)

17.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

18.    The CONTRACT is a written contract between the parties.  (Due to a confidentiality provision in the CONTRACT, Cross-Complainants are not attaching the documents as an exhibit, but have pled the essential relevant terms.)  SENSIBLE is a successor-in-interest to the benefits of LEIZEROVITZ and FEYGENBERG under the CONTRACT.

CROSS-COMPLAINT

19.    Cross-Complainants performed and were ready, willing and able to perform all obligations required of them pursuant to the CONTRACT except as have been waived, excused or rendered impossible by Cross-Defendants and their conduct.

20.    Cross-Defendants breached the contract by (a) failing to contribute $1,022,500 of their own funds (not borrowed funds) to the acquisition of the Property, (b) not causing the Trustee's foreclosure sale of the Property to be conducted as agreed where title to the Property was vested solely in LEV and Cross-Complainants being provided immediately with a first position Deed of Trust; and ( c) based upon promises made in connection with obtaining the Secret Loans, potentially giving third parties lien rights in the Property superior to those of Cross-Defendants.

21.    Based upon Cross-Defendants' breach of contract, Cross-Complainants have sustained damages in terms of the judgment against FEYGENBERG that has now become a lien against the Property and the claims, clouds on title, and prospective defense costs and liability with respect to the Secret Loans.  Cross-Complainants believes that their damages may exceed $600,000, subject to proof at the time of trial.

## SECOND CAUSE OF ACTION

(By all Cross-Complaints for Breach of Fiduciary Duty

Against the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

22.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

23.    The LEV PARTIES were Cross-Complainants' business partners in connection with the transaction memorialized by the CONTRACT.  Further, the LISITSA PARTIES acted a counsel for Cross-Complainants.  Consequently, Cross-Defendants and each of them owed a fiduciary duty of care to Cross-Complainants.

24.    Defendants breached their fiduciary duty to Cross-Complainants by, among other things, arranging and obtaining the Secret Loans, failing to disclose the Secret Loans to Cross-Complainants, and conducting the foreclosure sale of the Property so as to convey title, in part, to FEYGENBERG and LEIZEROVITZ.

//

7

CROSS-COMPLAINT

25.     As the result of Cross-Defendants' breach of fiduciary duty, Cross-Complainants have sustained damages which are believed to be in excess of $600,000.

26.     Cross-Defendants' breach of fiduciary duty was committed with fraud and malice as those terms are defined in Civil Code Section 3294.   Cross-Defendants knew that the Secret Loans were contrary to promises and representations made to Cross-Complainants as well as the CONTRACT, and that Cross-Complainants would sustain harm by virtue of the Secret Loans. Further, Cross-Defendants had a duty to disclose the Secret Loans to Cross-Complainants but failed to do so.  Cross-Complainants are therefore entitled to an award of exemplary damages against Cross-Defendants in an amount deemed appropriate by the trier of fact.

**THIRD CAUSE OF ACTION**

(By All Cross-Complainants for Concealment Against

the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

27.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

28.     By The LEV PARTIES were Cross-Complainants' business partners in connection with the transaction memorialized by the CONTRACT.  Further, the LISITSA PARTIES acted a counsel for Cross-Complainants.  By virtue of these relationships, Cross-Defendants and each of them had a duty to disclose the Secret Loans to Cross-Complainants.  However, Cross-Defendants failed to disclose the Secret Loans to Cross-Complainants, purposefully concealing their existence, in order to deceive Cross-Complainants so that they would not know that these loans existed.

29.     Based upon Cross-Defendants' concealment of the Secret Loans, Cross-Complainants were unaware of those Loans and the promises that the LEV PARTIES made to third parties, supposedly on Cross-Complainants' behalf.  Cross-Complainants would not have proceeded with the business transaction with LEV had they known of the Secret Loans.

30.     Cross-Complainants have been damaged by Cross-Defendants' deceit in terms of the claims made by third parties that loaned LEV money pursuant to the Secret Loans which include their placing clouds on title, and prospective defense costs and liability.  Cross-Complainants believes that their damages may exceed $300,000, subject to proof at the time of trial.

CROSS-COMPLAINT

31.    Cross-Defendants' concealment of the Secret Loans was fraudulent and committed with malice as those terms are defined in Civil Code Section 3294.   Cross-Defendants knew that the Secret Loans were contrary to promises and representations made to Cross-Complainants as well as the CONTRACT, and that Cross-Complainants would sustain harm by virtue of the Secret Loans. Further, Cross-Defendants had a duty to disclose the Secret Loans to Cross-Complainants but failed to do so.  Cross-Complainants are therefore entitled to an award of exemplary damages against Cross-Defendants in an amount deemed appropriate by the trier of fact.

<strong>FOURTH CAUSE OF ACTION</strong>

(By All Cross-Complainants for Indemnity Against

the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

32.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

33.    The third parties who made Secret Loans to LEV have brought lawsuits against Cross-Complainants for the breach of such loans.  Cross-Complainants have been named as defendants in these actions based upon the unauthorized and fraudulent representations and promises by Cross-Defendants that they were acting on behalf of Cross-Complainants.  The claims against Cross-Complainants in these actions are thus wholly based upon the misconduct of Cross-Defendants.  Cross-Complainants are therefore entitled to indemnity from Cross-Defendants for any cost and expense in opposing the lawsuits based upon the Secret Loans as well as for any settlement or judgment with respect to those claims that detrimentally impact Cross-Complainants.

<strong>FIFTH CAUSE OF ACTION</strong>

(By All Cross-Complainants for Declaratory Relief Against

the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

34.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

35.    An actual controversy exists among the parties concerning their respective rights and interests in connection with respect to the satisfaction of the judgment against FEYGENBERG and the responsibility for the Secret Loans.  Cross-Complainants contend and Cross-Defendants dispute

9

that: (a) Cross-Complainants have no responsibility to satisfy the judgment against FEYGENBERG; (b) SENSIBLE is entitled to payment of all principal, interest and any other fees and charges on the loan it holds that is secured by the Property without setoff for the judgment against FEYGENBERG; (c) Cross-Defendants are solely responsible for any and all costs and liabilities arising from the Secret Loans; and (d) Cross-Complainants are entitled to indemnity from Cross-Defendants for the claims asserted by the third parties based upon the Secret Loans, including the attorneys fees and costs incurred by Cross-Complainants in defending any action related thereto.  Consequently, a judicial determination of the rights and interest of the parties with respect to these matters is necessary and appropriate.

**GENERAL ALLEGATIONS**

**AS TO ADDITIONAL CLAIMS AGAINST CROSS-DEFENDANTS BY LEIZEROVITZ**

36.     Coachella Vineyard Luxury RV Park, LLC ("RV") owned a real property in Coachella, California which is vacant land that is being developed as a luxury RV park (the "RV Property") .  The RV Property is legally described as follows:

LOT 71 OF TRACT 30117-1, IN THE CITY OF COACHELLA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 331, PAGES 71 AND 78, INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM 50% INTEREST IN AND TO ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS RESERVED BY CANAL WATER LANDOWNERS, A CALIFORNIA CORPORATION IN DEED RECORDED MAY 27, 1954 IN BOOK 1592, PAGE 201 OF OFFICIAL RECORDS.

EXCEPT THEREFROM THAT PORTION WHICH FALL WITHIN THE BOUNDARIES OF TRACT 328610-1, AS SHOWN ON THE SUBDIVISION MAP FILED ON MAY 2,2006 IN BOOK 401 OF MAPS, PAGES 79 TO 88 INCLUSIVE IN THE OFFICE OF THE RIVERSIDE COUNTY RECORDER.

APN: 601-620-012-0.

37.     Prior to July 2018, LEIZEROVITZ held certain Deeds of Trust securing loans he had made to RV and affiliated entities.  Pursuant to an agreement with RV and others, LEIZEROVITZ agreed to release his Deeds of Trust on the RV Property to allow RV to obtain new financing for the development of that property.  The new financing including a loan made by LEV on or about July 31, 2018, purporting to be in the principal amount of $2,000,000 (the "LEV Loan").  The LEV Loan

10

1   was secured by a first-position Deed of Trust on the RV Property (the "LEV Deed of Trust") which

2   was recorded on August 7, 2018.

3          38.    In consideration for releasing his Deeds of Trust against the RV Property,

4   LEIZEROVITZ received, among other things, an unsecured Promissory Note from RV in the

5   amount of $400,000 (the "Unsecured Note") and a Promissory Note (the "Secured Note") which

6   was secured by a Deed of Trust against the RV Property in the amount of $500,000 (the "RV Deed

7   of Trust").

8          39.    In February 2019, RV agreed that the Unsecured Note would be secured by the RV

9   Deed of Trust as an extension of credit. Additionally, LEIZEROVITZ agreed to provide RV with a

10   further loan of $50,000 as an extension of the loan secured by the RV Deed of Trust. The total

11   amount secured by the RV Deed of Trust was therefore $950,000. The RV Deed of Trust was

12   recorded on February 7, 2019 and constituted a third-position lien on the RV Property.

13          40.    On June 17, 2019, LEV declared the LEV Loan to be in default. The Notice of

14   Default was prepared by the RPT PARTIES as the successor Trustee for the LEV Deed of Trust and

15   recorded on June 19, 2019. The Notice of Default declared that the amount due on the LEV Loan

16   was $2,450,244.27. The asserted amount of the default was disputed by RV.

17          41.    LEV recorded a Notice of Sale in connection with its foreclosure on the RV Property

18   on September 19, 2019. The sale was set for October 15, 2018.

19          42.    Although LEV ultimately reduced its payoff demand for its loan, RV continued to

20   dispute the amount demanded by LEV and brought a legal action in the Riverside Superior Court

21   seeking a restraining order and preliminary injunction to prevent LEV from completing the

22   foreclosure with the excessive payoff demand (*GA&TV Inc. v. Lev Investments, LLC*, Case Number

23   RIC 1905065) (the "Riverside Acton"). The Riverside Court granted the restraining order on

24   October 10, 2019. By stipulation of the parties, the hearing on the preliminary injunction was heard

25   on November 6, 2019. Although the Riverside Court agreed that the Notice of Default and the

26   original demand by LEV was excessive, the Court denied the preliminary injunction sought by RV.

27   Nonetheless, the Riverside Court specifically stated that the foreclosure sale would need to be based

28   upon LEV's reduced demand.

43.     The expiration of the temporary retraining order and the Court's denial of the preliminary injunction was on November 6, 2019.  Civil Code 2924g(d) imposes an automatic seven day stay upon a foreclosure sale after the expiration of a temporary retraining order and denial of a preliminary injunction, unless there is an express court order waiving the provisions of that statute.  Here, there was no waiver of the stay by the Court.  Hence, pursuant to Civil Code 2924g(d), the earliest date that LEV could proceed with its foreclosure sale of the RV Property was November 13, 2019.

44.     LEIZEROVITZ was following LEV's foreclosure and the Riverside Action as a junior lien holder.   LEIZEROVITZ was interested in the foreclosure and in possibly acquiring the RV Property at the foreclosure sale in order to protect his financial interest in the property by virtue of the RV Deed of Trust.  However, on or about November 12, 2019, LEIZEROVITZ learned that the RPT PARTIES conducted the foreclosure for LEV on November 7, 2019.  The sale was therefore in violation of Civil Code 2924g(d) and LEIZEROVITZ was denied the opportunity to attend the foreclosure and prospectively purchase the RV Property.

45.     Furthermore, the Trustee's Deed from LEV's foreclosure on the RV Property indicates that the foreclosure proceeded based upon an unpaid debt of $2,570,949.36 and that the amount paid by LEV as a credit bid was $2,500,000.00.  This amount appears to be in excess of the amount that the Riverside Court ruled was appropriate so that the foreclosure was in violation of this Court's Order.  In this regard, it is questionable that LEV could have submitted a credit bid for $2,500,000 since that appears to be more than the Riverside Court determined was owed on the loan.

46.     Cross-Complainants are informed and believe and thereon allege that RV demanded that the improper foreclosure sale of the RV Property be set aside.  However, Cross-Defendants have failed to cancel the Trustee's Deed or confirm RV's title to the Property which would restore the RV Deed of Trust and LEIZEROVITZ's secured interest in the property.  As a result, LEIZEROVITZ has lost his security interest in the RV Property which devalues his loans to RV and denies him the opportunity to foreclose on the RV Property if the loans are not repaid.

//

**SIXTH CAUSE OF ACTION**

(By LEIZEROVITZ for Quiet Title against the LEV PARTIES)

47.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

48.     The foreclosure sale of the RV Property was in violation of law and void based upon the failure of consideration.  The foreclosure was thus ineffective to divest RV of title to the RV Property and extinguish the RV Deed of Trust.

49.     Cross-Defendants claim and assert that LEV is the owner of the RV Property and that the RV Deed of Trust was extinguished pursuant to the improper and unlawful foreclosure sale. Cross-Defendants' claim of title to the RV Property is adverse to the claim of LEIZEROVITZ that the RV Deed of Trust remains a valid encumbrance of title to the property.

50.     LEIZEROVITZ seeks to quiet title as of November 7, 2019 (the date of the unlawful foreclosure) as to the RV Deed of Trust as a valid and existing encumbrance of title to the RV Property free and clear of any liens Cross-Defendants caused to become attached to the property since that date.

51.     LEIZEROVITZ has and will sustain incidental damages, subject to proof at the time of trial.

**SEVENTH CAUSE OF ACTION**

(By LEIZEROVITZ for Cancellation of Instruments

against the LEV PARTIES, the RPT PARTIES and ROES 31 to 40)

52.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

53.     The RPT PARTIES' foreclosure sale of the RV Property was in violation of law and void based upon the failure of consideration.  The RPT PARTIES therefore did not have legal authority to execute the Trustee's Deed purported conveying title to the RV Property to LEV and the Trustee's Deed is a void instrument.

54.     LEIZEROVITZ has and will sustain serious injury and pecuniary loss based upon LEV's claims of title to the RV Property pursuant to the invalid Trustee's Deed.  Among other

13

things, LEIZEROVITZ has lost security for loans totaling $950,000 in principal.  The Court should

therefore declare that the Trustee's Deed is canceled and of no force and effect.

55.    LEIZEROVITZ has and will sustain incidental damages, subject to proof at the time

of trial.

**EIGHTH CAUSE OF ACTION**

(By LEIZEROVITZ for Wrongful Foreclosure

against the LEV PARTIES, the RPT PARTIES and ROES 31 to 40)

56.    Cross-Complainants incorporate here by reference all of the allegations set forth in

paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

57.    As describe herein, Cross-Defendants caused an illegal foreclosure sale of the RV

Property.  The foreclosure was in violation of Civil Code 2924g(d) and this Court's specific order.

The sale and the resulting Trustee's Deed are therefore void.

58.    LEIZEROVITZ was following LEV's foreclosure and the Riverside Action as a

junior lien holder.   LEIZEROVITZ was interested in possibly acquiring the RV Property at the

foreclosure sale in order to protect his financial interest in the property by virtue of the RV Deed of

Trust.  However, LEIZEROVITZ was preempting from monitoring the foreclosure and

prospectively acquiring the RV Property by Cross-Defendants' action in surreptitiously proceeding

with the trustee's sale before it was legal to do so.

59.    LEIZEROVITZ has been substantially damaged based upon the loss of the RV

Property as security for his loans.  Without the RV Property as security, LEIZEROVITZ expects to

have difficulty in obtaining repayment and his damages could be in excess of $1,000,000.

60.    Even if the Court restores RV's title to the property and LEIZEROVITZ's Deed of

Trust, LEIZEROVITZ has and will sustain incidental damages, subject to proof at the time of trial.

**NINTH CAUSE OF ACTION**

(By LEIZEROVITZ for Declaratory and Injunctive Relief

against the LEV PARTIES, the RPT PARTIES and ROES 31 to 40)

61.    Cross-Complainants incorporate here by reference all of the allegations set forth in

paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

14

62.     A current dispute exists between the parties as to the invalidity of LEV's foreclosure on the RV Property and whether LEIZEROVITZ's Deed of Trust was extinguished. LEIZEROVITZ contends that Cross-Defendants' non-judicial foreclosure sale of the RV Property is void and that the RV Deed of Trust remains a valid encumbrance of the RV Property.  Cross-Defendants deny and dispute these contentions.  LEIZEROVITZ therefore seeks a judicial determination of this controversy which is necessary and appropriate to determine ownership of the RV Property and prevent Cross-Defendants from depriving LEIZEROVITZ of security for his loans to RV and its affiliates.

63.     LEIZEROVITZ is informed and believes and thereon alleges that Cross-Defendants plan to encumber, hypothecate, transfer, and/or sell the RV Property.  Such action will potentially prevent LEIZEROVITZ from obtaining the relief sought through this action and cause irreparable damage to LEIZEROVITZ.  LEIZEROVITZ is owed over $1,000,000 that is supposed to be secured by the RV Property.  The Court should therefore issue a temporary restraining order and preliminary injunction enjoining Cross-Defendants from encumbering, hypothecating, transferring, and/or selling the RV Property during the pendency of this action as well as a permanent injunction once the parties' rights are determined by the Court.

**PRAYER**

WHEREFORE, Cross-Complainants pray for judgment against Cross-Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION:**

1.     For compensatory damages of $600,000.00, according to proof;

**ON THE SECOND CAUSE OF ACTION:**

2.     For compensatory damages of $600,000.00, according to proof;

3.     For punitive damages;

**ON THE THIRD CAUSE OF ACTION:**

4.     For compensatory damages of $300,000.00, according to proof;

5.     For punitive damages;

//

15

**ON THE FOURTH OF ACTION:**

6.    For an order that Cross-Defendants indemnify Cross-Complainants for any cost and expense in opposing the lawsuits based upon the Secret Loans as well as for any settlement or judgment with respect to those claims that detrimentally impact Cross-Complainants;

**ON THE FIFTH CAUSE OF ACTION:**

7.    For a judicial determination and declaration that: (a) Cross-Complainants have no responsibility to satisfy the judgment against FEYGENBERG; (b) SENSIBLE is entitled to payment of all principal, interest and any other fees and charges on the loan it holds that is secured by the Property without setoff for the judgment against FEYGENBERG; (c) Cross-Defendants are solely responsible for any and all costs and liabilities arising from the Secret Loans; and (d) Cross-Complainants are entitled to indemnity from Cross-Defendants for the claims asserted by the third parties based upon the Secret Loans, including the attorneys fees and costs incurred by Cross-Complainants in defending any action related thereto;

**ON THE SIXTH CAUSE OF ACTION:**

8.    For a judgment quieting LEIZEROVITZ'S Deed of Trust to the RV Property senior to any liens created by LEV since November 7, 2019;

9.    For incidental damages subject to proof at the time of trial;

**ON THE SEVENTH CAUSE OF ACTION:**

10.    For cancellation of the Trustee's Deed purporting to convey title to the RV Property to LEV;

11.    For incidental damages subject to proof at the time of trial;

**ON THE EIGHTH CAUSE OF ACTION:**

12.    For compensatory damages of $1,000,000.00, according to proof;

**ON THE NINTH CAUSE OF ACTION:**

13.    For a permanent injunction enjoining Cross-Defendants from encumbering, hypothecating, transferring, and/or selling the RV Property;

14.    For a temporary restraining order and preliminary injunction enjoining Cross-Defendants from encumbering, hypothecating, transferring, and/or selling the RV Property during

CROSS-COMPLAINT

the pendency of this action;

**ON ALL CAUSES OF ACTION:**

15.    For prejudgment interest pursuant to Civil Code Sections 3287 and/or 3288;

16.    For costs of suit; and

17.    For such further relief as the Court deems just and proper.


DATED: March 20, 2020.                    BURGEE & ABRAMOFF P.C.


                                          By:_____/s/ John G. Burgee_____
                                                 JOHN G. BURGEE
                                          Attorneys for Defendants and Cross-Complainants
                                          RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ
                                          and SENSIBLE CONSULTING AND
                                          MANAGEMENT, INC.

17

CROSS-COMPLAINT

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 20501 Ventura Boulevard, Woodland Hills, California 91364.

      On March 20, 2020, I served the foregoing document described as: CROSS-COMPLAINT OF RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ AND SENSIBLE CONSULTING AND MANAGEMENT, INC. FOR DAMAGES AND EQUITABLE RELIEF on the interested parties in this action:

/X/    by placing / / the original /X/ a true copy thereof enclosed in sealed envelopes addressed as follows:

      James R. Felton, Esq.
      G&B Law, LLP
      16000 Ventura Blvd., Suite 1000
      Encino, California 91436-2730
      E:  jfelton@gblawllp.com
      Fax:  818-986-6534

[X]    BY MAIL

    [X]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **(BY PERSONAL SERVICE) I delivered such envelope by hand to the office/home of the addressee.

      Executed March 20, 2020, at Woodland Hills, California.

/X/    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

| | |
|---|---|
|   John Burgee | /s/ John G. Burgee |
| Type or Print Name | Signature |

CROSS-COMPLAINT