1  **JOHN G. BURGEE, ESQ. (State Bar No. 132129)**
   jburgee@bandalaw.net
2  **BURGEE & ABRAMOFF, P.C.**
   20501 Ventura Boulevard, Suite 262
3  Woodland Hills, California  91364
   T: (818) 264-7575
4  F: (818)264-7576

5  Attorneys for Defendants/Cross-Complainants
   RUVIN FEYGENBERG, MICHAEL
6  LEIZEROVITZ and SENSIBLE CONSULTING
   AND MANAGEMENT, INC.

7

8

9              UNITED STATES BANKRUPTCY COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11            SAN FERNANDO VALLEY DIVISION

12

13 In re:                            )  Case No.  1:20-bk-11006-VK
                                     )
14 Lev Investments, LLC,             )  Chapter 11
                                     )
15         Debtor.                   )  Adversarial No. 1:20-ap-01065-VK
   _____   )
16                                   )  MEMORANDUM OF POINTS AND
   Lev Investments, LLC,             )  AUTHORITIES OF DEFENDANTS/
17                                   )  CROSS-COMPLAINANTS RUVIN
           Plaintiff,                )  FEYGENBERG, MICHAEL
18                                   )  LEIZEROVITZ, AND SENSIBLE
        vs.                          )  CONSULTING AND MANAGEMENT,
19                                   )  INC. IN OPPOSITION TO REMAND;
   Ruvin Feygenberg, Michael Leizerovitz, )  DECLARATION OF JOHN G.
20 Sensible Consulting and Management, )  BURGEE
   Inc., Ming Zhu, LLC and Does 1    )
21 Through 100;                      )
                                     )  Status Conference: August 12, 2020
22         Defendants.               )  Time: 1:30 p.m.
   _____   )  Courtroom:    301
23                                   )        21041 Burbank Blvd.
   AND CROSS-COMPLAINT.              )        Woodland Hills, CA 91367
24 _____   )

25        Defendants/Cross-Complainants Ruvin Feygenberg, Michael Leizerovitz, and

26 Sensible Consulting and Management, Inc. ("Sensible") submit the following points and

27 authorities and attached Declaration of John G. Burgee in opposition to the Court's Order

28 to Show Cause re: Remand for this adversary proceeding:

                                     1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      The Albers Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      The Coachella Foreclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    PENDING CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.     THE COURT SHOULD NOT REMAND THIS ACTION TO STATE COURT. 12

        A.      The Court has Subject Matter Jurisdiction of the Claims Stated in this
                Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Mandatory Abstention Would Not Be Appropriate. . . . . . . . . . . . . . . 15

        C.      The Court Should Not Elect to Remand This Action. . . . . . . . . . . . . . 17

V.      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

DECLARATION OF JOHN G. BURGEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

Page

Statutes:

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 19

28 U.S.C. § 1452. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

28 U.S.C. §§ 1441–1455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


Cases:

*Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)   13, 19

*Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 134 S.Ct. 2165, 189 L.Ed.2d
      83 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re AWTR Liquidation Inc.*, 547 B.R. 831 (Bankr. C.D. Cal. 2016) . . . . . . . . . . . . . . 19

*In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733 (Bankr. C.D. Cal. 2007) . . . . . . . . . 18

*In re Enron Corp.*, 296 B.R. 505 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Fietz*, 852 F.2d 455 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Gen. Carriers Corp.*, 258 B.R. 181 (B.A.P. 9th Cir. 2001) . . . . . . . . . . . . . . . . . 16

*In re Harris Pine Mills*, 44 F.3d 1431 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Lazar*, 237 F.3d 967 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Ray*, 624 F.3d 1124 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Smith*, 389 B.R. 902 (Bankr. D. Nev. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) . . . . . . . . . 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION.

Debtor Lev Investments, LLC ("Lev") commenced this bankruptcy proceeding on June 1, 2020.  Lev had two major assets: a residential property in Sherman Oaks (the "Property"), and a loan receivable from an affiliated company.  Lev valued the residential Property at $3,300,000.  (BK Document 1, pages 38-39.)

The primary encumbrance of the Property is a Deed of Trust currently held by Sensible based upon a loan to Lev in the original amount of approximately $1,047,675 (as reported by Lev in BK Document 1 at page 43).  This Deed of Trust was subject to a non-judicial foreclosure at the time the bankruptcy was commenced and the Trustee's sale of the Property was set for June 2, 2020.

Lev has repeated stated in its papers filed with the Court that it commenced this bankruptcy proceeding:  "In order to prevent the foreclosure of the Property (the Debtor's primary asset) and preserve the equity in the Property for the benefit of all creditors (not just the Lenders), and to obtain resolution of the various litigation matters in which the Debtor is involved in an orderly and coordinated manner ... " (*See, e.g.,* Lev's Opposition to Remand of the adversary action 20-ap-01060-VK, Document 9, page 4, lines 1-4.) This Adversary Proceeding is one of the litigation matters involving Lev that directly impacts the residential property which is Lev's primary asset and claims against Lev that need to be liquidated in order for the administration of the bankrupt estate.  Specifically, the claims in this action relate to the amount due and payable on the Deed of Trust, as well as claims related to the lien asserted by FR LLC on the Property and consequential damages arising from an improper foreclosure by Lev on another property.  All of these matters need to be determined in connection with any plan for reorganization.  This Court should therefore retain jurisdiction of these claims.

//

//

1  **II.    BACKGROUND.**[1]

2      **A.    The Albers Property.**

3          On or about December 27, 2018, Feygenberg and Leizerovitz entered into a

4  business transaction with Lev for Lev's acquisition of the Property. (Exhibit 2, pp. 3-4, ¶

5  10.)  The parties' plan was to purchase a defaulted Promissory Note secured by a first

6  position Deed of Trust for the Property which was being foreclosed, and to complete the

7  non-judicial foreclosure in order for Lev to obtain title to the Property. (*Id.*)

8  Feygenberg's and Leizerovitz's role in the transaction was to act as lenders who were

9  initially secured by having an interest in the purchased Note and after foreclosure, were to

10  be secured by a first-position lien against the Property. (*Id.*)  Consequently, the parties'

11  written agreement specifically provided that, assuming Lev was the successful bidder at

12  the foreclosure sale, Lev and only Lev would take title to the Property, and that a first-

13  position Deed of Trust would immediately be recorded securing Feygenberg's and

14  Leizerovitz's loan. (*Id.*)  It was not contemplated, intended or agreed that either

15  Feygenberg or Leizerovitz would ever be a title holder of the Property. (*Id.*)

16          The principal Loan Agreement among the parties for this venture was prepared by

17  Cross-Defendant Yevgeniya Lisitsa (also known as Y. Gina Lisitsa) whose law

18  corporation is Cross-Defendant Lisitsa Law, Inc. (jointly "Lisitsa").  Lisitsa acted as

19  counsel for all parties to the Loan Agreement. (*Id.*)

20  //

21  //

22

23          [1]This section substantially provides a summary of the allegations principally set
forth in the Cross-Complaint of Feygenberg, Leizerovitz and Sensible filed in this action
24  which is attached hereto as Exhibit 2 and found in bankruptcy ("BK") Document 55 at
pages 236-253.

25
          Lev's operative pleading in this matter is its First Amended Complaint which is
26  principally based upon the same facts and is attached hereto as Exhibit 1 and found in
.bankruptcy ("BK") Document 55 at pages 105-131.  The State Court sustained a
27  demurrer to the First Amended Complaint so that only the First and Second Causes of
Action remain. (See, BK Document 55, pages 219-225.)

28

1    Pursuant to the Loan Agreement, LEV was supposed to contribute $1,022,500 to

2 the purchase of the Note and Deed of Trust.  Unbeknownst to Feygenberg and

3 Leizerovitz, Lev's principal, Cross-Defendant Dmitri Lioudkovski was making deals with

4 others to obtain the funds Lev needed to contribute to the purchase of the Note and Deed

5 of Trust.  (Exhibit 2, p. 4, ¶ 11.)   In its Complaint that has been removed to this Court as

6 20-ap-01060-VK, FR LLC claims that it is the assignor of one of such loans in the alleged

7 amount of $119,000.[2]  (See, BK Document 9, pages 7-8.)  The other known loan that Lev

8 obtained was from Mariya Ayzenberg who was repaid by Lev prior to bankruptcy.

9    Furthermore, the loans obtained by Lioudkovski were not only for Lev, but also

10 purportedly obtained  on behalf of Feygenberg and Leizerovitz. (Exhibit 2, p. 4, ¶ 11.)

11 Feygenberg and Leizerovitz never gave Lev or Lioudkovski authority to obtain loans on

12 their behalf and were unaware of the deals being made.  (*Id*.)  For example, FR LLC's

13 Complaint alleges that "Defendants, and each of them [*i.e.* Lev, Lioudkovski,

14 Feygenberg, Leizerovitz and Sensible], approached [FR's] assignor for a loan of

15 $119,000 ..."  (See, BK Document 9, page 7, lines 24-25.)  Additionally, FR LLC claims

16 that it is entitled to a Deed of Trust on the Property that is adverse, *i.e.* superior, to

17 Sensible's Deed of Trust which secures the loan initially made by Feygenberg and

18 Leizerovitz. (*Id*., page 10.)   Cross-Complainants did not discover the loan by FR LLC's

19 assignor until after it filed its lawsuit in December 2019.  (Exhibit 2, p. 6, ¶ 16.)

20    As contemplated by the Loan Agreement, Lev, Feygenberg and Leizerovitz

21 acquired the defaulted Promissory Note secured by the Property that was in foreclosure

22 on or about December 31, 2018.  (Exhibit 2, p. 4-5, ¶ 12.) During the next month, the

23

24    ────────────────

[2]FR claims that "on or about December 28, 2018, [its] assignor "wired $119,000 to
25 escrow/title..."  (BK Document 9, page 8, lines 6-7.)  To date, FR has failed and refused
to name its assignor.  However, according to the closing statement for the transaction, the
26 only parties wiring funds to escrow were Mariya Ayzenberg (who made a separate claim
for a loan of $300,000 which was removed as 20-ap-1062-VK) and Lisitsa. (See, BK
27 Claim 5, page 6 [Settlement Statement].)  Since Ayzenberg represented herself with
regard to her loan to Lev and Lisitsa was the only other person wiring money to escrow,
28 Lisitsa is presumably FR's assignor.

1   owner of the Property engaged in legal actions in both the Superior Court and the

2   Bankruptcy Court to try to derail the foreclosure. (*Id*.)  The foreclosure sale of the

3   Property ultimately occurred on January 30, 2019. (Exhibit 2, p. 5, ¶ 13.)

4        Although the Property was sold based upon a credit bid of the amount due on the

5   Promissory Note, the sale did not proceed as agreed by Feygenberg, Leizerovitz and Lev.

6   (*Id*.)  Despite the agreement that only Lev would take title to the Property and that a first-

7   position Deed of Trust in favor of Feygenberg and Leizerovitz would be recorded against

8   the Property as soon as the foreclosure occurred, the Trustee conducting the foreclosure

9   sale under Lisitsa's and Lev's supervision, issued a Trustee's Deed naming Lev,

10  Feygenberg and Leizerovitz jointly as owners of the Property. (*Id*.)

11       Realizing this mistake, Lisitsa prepared a Grant Deed to divest Feygenberg and

12  Leizerovitz of ownership of the Property and a Deed of Trust to secure Feygenberg's and

13  Leizerovitz's loan as a lien against the Property.[3]  (*Id*.)  These documents were executed

14  on January 31, 2019, just one day after the Trustee's sale. (*Id*.)  However, Lisitsa, who

15  had possession of these instruments, did not record them until March 22, 2019, after many

16  demands for copies of the recorded documents. (*Id*.)

17       In early March 2019, before the Grant Deed and Deed of Trust, Lev acting through

18  Lisitsa asked Sensible to provide a pay-off demand for the loan in connection with an

19  escrow for a purported sale of the Property. (Exhibit 2, pp. 5-6, ¶ 14.)  In connection with

20  that transaction, Lisitsa told Sensible that there was a "problem" with the title to the

21  Property. (*Id*.)  That "problem" ultimately turned out to be a judgment lien against

22  Feygenberg for an old lawsuit that Feygenberg believed had been settled and dismissed.

23  (*Id*.)  Unbeknownst to Feygenberg, the claims against him were not dismissed and a

24  judgment was entered against him for $169,855.38. (*Id*.)  This "problem" would have

25

26     [3]Leizerovitz assigned his interest in the loan to Sensible at this time which became
a beneficiary of the Deed of Trust with Feygenberg for the Deed of Trust prepared by
27  Lisitsa. (Exhibit 2, pp. 5, ¶ 13.)  Feygenberg later sold and assigned his interest in the
loan to Sensible as well. (Exhibit 2, pp. 5-6, ¶ 14.)  Sensible is therefore the sole holder
28  of the Note and Deed of Trust at this time. (*Id*.)

1  never arisen if the foreclosure on the Property had been handled as agreed where

2  Feygenberg would never have been named as a title holder of the Property.  However, the

3  mistake of naming Feygenberg as a joint owner of the Property for one day cause the pre-

4  existing judgment lien to attach to the Property.

5       Based upon this "problem", Lev, through its agents, demanded that Sensible agree

6  to a payoff of the loan that is reduced by the amount of the judgment.  (*Id*.)  When

7  Sensible refused to do so, Lev brought this lawsuit against Sensible, Feygenberg and

8  Leizerovitz seeking compensation not only for the judgment, but also other for other

9  undisclosed liens against the Property that they supposedly caused.  (*Id*., and Exhibit 1.)

10 Lev also alleges that the interest rate for the loan is usurious and unlawful.  (See Exhibit

11 1.)

12

13      **B.     The Coachella Foreclosure.**

14      Lev made a loan in or about July 31, 2018, in the original principal amount of

15 $2,000,000 that was secured by a first-position Deed of Trust for vacant land in

16 Coachella, California.  (Exhibit 2, pp. 10-11, ¶ 37.)  At the same time, Leizerovitz, who

17 had held prior liens against the land which were partially paid off by Lev's loan, was

18 given a Deed of Trust for a junior lien on the land.  (Exhibit 2, p. 11, ¶ 38.)

19      The borrower defaulted on Lev's loan and Lev retained Cross-Defendant Real

20 Property Trustee, Inc. whose principal is Mike Kemel (jointly "RPT"), to conduct a non-

21 judicial foreclosure on the land.  (Exhibit 2, p. 11, ¶ 40.)  During the foreclosure process,

22 disputes arose between Lev and the borrower as to the amount due on the loan.  (*Id*.)

23 Although LEV ultimately reduced its payoff demand for its loan, the borrower continued

24 to dispute the amount demanded by LEV and brought a legal action in the Riverside

25 Superior Court seeking a restraining order and preliminary injunction to prevent LEV

26 from completing the foreclosure with the excessive payoff demand (*GA&TV Inc. v. Lev*

27 *Investments, LLC*, Case Number RIC 1905065).  (Exhibit 2, p. 11, ¶ 42.)

28 //

1      The Riverside Court granted the restraining order requested by the borrower on

2 October 10, 2019. (*Id*.)  By stipulation of the parties, the hearing on the preliminary

3 injunction was heard on November 6, 2019. (*Id*.)  Although the Riverside Court agreed

4 that the amount stated in Lev's Notice of Default and the original demand by Lev were

5 excessive, the Court denied the preliminary injunction sought by the borrower. (*Id*.)

6      The expiration of the temporary retraining order and the Court's denial of the

7 preliminary injunction occurred on November 6, 2019. (Exhibit 2, p. 12, ¶ 43.)

8 California Civil Code 2924g(d) imposes an automatic seven day stay upon a foreclosure

9 sale after the expiration of a temporary retraining order and denial of a preliminary

10 injunction, unless there is an express court order waiving the provisions of that statute.

11 The Riverside Court did not waive the statutory stay. (*Id*.)  Hence, pursuant to Civil Code

12 2924g(d), the earliest date that Lev could proceed with its foreclosure sale of the land

13 securing its loan was November 13, 2019. (*Id*.)   RPT conducted the foreclosure for Lev

14 on November 7, 2019. (*Id*.)  The sale was therefore in violation of Civil Code 2924g(d).

15      The borrower demanded that the improper foreclosure sale of the land be set aside.

16 Instead, Lev proceeded with a motion in the Riverside Court attempting to validate the

17 premature sale.  The Court refused to do so and denied Lev's motion.

18      Since Leizerovitz's junior lien was wiped out by the improper foreclosure,

19 Leizerovitz brought claims in this action seeking to cancel the Trustee's Deed and restore

20 his secured interest in the land.  (See, Exhibit 2.)  Leizerovitz also sought consequential

21 damages. (*Id*.)  Only days before Lev commenced this bankruptcy, it recorded a

22 Rescission Deed on May 29, 2020, purporting to attempt to reconvey title back to the

23 borrower.  Although reconveyance of title would be part of the relief that Leizerovitz has

24 been seeking in this action, by virtue of waiting more than six months to reconvey the

25 land during which time the Covid pandemic occurred, Leizerovitz has substantial

26 consequential damages for which he is pursuing compensation.

27 //

28 //

### III.    PENDING CLAIMS.

The pleadings of this Adversary Proceeding which were removed to this Court entail the following claims:

1.    Lev's First Amended Complaint.  (Exhibit 1.)  The claims remaining in this pleading are the First Cause of Action for Breach of Implied Covenant against Encumbrances against Feygenberg, Leizerovitz and Sensible, and the Second Cause of Action for Usury against Sensible only.

A.    The Breach of Implied Covenant against Encumbrances cause of action is principally based upon a judgment lien against Feygenberg that attached to the property when he was (improperly) granted title to the Property as a joint tenant.  This claim seeks to adjudicate liability for that lien.  The claim is disputed by Feygenberg, Leizerovitz and Sensible because Feygenberg was never supposed to be an owner of the Property but was nonetheless placed on title as a co-owner of the Property by the mistake of Lev and Lisitsa who were supervising the foreclosure.  Lev seeks to offset the lien against funds due to Sensible on its secured loan.  The determination of this claim directly impacts the property of the bankruptcy estate and the administration of the bankruptcy.

B.    The Usury cause of action asserts that the interest rate and points due on the loan held by Sensible which is secured by the Property violates California usury laws.  Sensible disputes this claim and asserts that the loan is exempt from usury limits since the loan was arranged by a licensed real estate broker (Lisitsa is a broker as well as an attorney) and Lev is a sophisticated borrower.  The determination of this claim directly impacts the property of the bankruptcy estate and the administration of the bankruptcy.

2.    Cross-Complaint by Feygenberg, Leizerovitz and Sensible.  (Exhibit 2.)  The Cross-Complaint in this action includes two groups of claims: a group of claims against Lev and Lisitsa based upon the unknown, "secret", loans Lev obtained from Ayzenberg, FR LLC and potentially others, and a group of claims against Lev and RPT related to the improper foreclosure on the Coachella land.

//

1          A.          The Loan claims are comprised of causes of action for breach of

2    contract, breach of fiduciary duty, concealment, indemnity and declaratory relief.  These

3    claims are related to the FR Complaint that has been removed to this Court as 20-ap-

4    1060-VK.  There is a substantial overlap in the issues presented such as who obtained and

5    is responsible for the purported loan by FR's assignor, and the claims asserted in this

6    action would be appropriate as a cross-claim in the FR action,   In order to adjudicate the

7    FR Complaint, the Court will necessarily need to hear the same evidence and make

8    rulings that adjudicate the related claims in this action.  As this Court previously

9    determined in retaining jurisdiction of the FR Complaint, Lev's liability for FR's assigned

10   loan directly impacts the property of the bankruptcy estate and the administration of the

11   bankruptcy.

12         B.          The improper foreclosure claims are comprised of causes of action

13   for quiet title, cancellation of instruments, wrongful foreclosure and declaratory and

14   injunctive relief.  Based upon the ostensible reconveyance of the improperly foreclosed

15   land just prior to the commencement of bankruptcy, Leizerovitz may have already

16   substantially obtained the relief he was seeking in most of these causes of action –

17   provided that the reconveyance is valid and constitutes a transfer of ownership that a title

18   company would insure (which is not known at this time).  However, Leizerovitz also has

19   sustained substantial consequential damages as a result of the improper foreclosure.  The

20   cause of action for wrongful foreclosure therefore still requires adjudication as to the

21   damages sustained.  Leizerovitz will be making a claim in this bankruptcy for such

22   damages.  Consequently, this claim will necessarily need to be determined by this Court

23   in order to administer the bankruptcy.

24   //

25   //

26   //

27   //

28   //

**IV.    THE COURT SHOULD NOT REMAND THIS ACTION TO STATE
COURT.**

   **A.    The Court has Subject Matter Jurisdiction of the Claims Stated in this
   Action.**

   Removal of state court actions to federal district court is governed by 28 U.S.C. §§
1441–1455. Removal and remand of actions related to bankruptcy cases is governed by §
1452.

   (a) A party may remove any claim or cause of action in a civil action . . . to
   the district court for the district where such civil action is pending, if such
   district court has jurisdiction of such claim or cause of action under section
   1334 of this title.

   (b) The court to which such claim or cause of action is removed my remand
   such claim or cause of action on any equitable ground. . . .

28 U.S.C. § 1452.

   As set forth in § 1452, removal to a bankruptcy court requires that the court have
jurisdiction of such claim or cause of action under 28 U.S.C. § 1334. 28 U.S.C. §
1334(b), with regard to bankruptcy cases and proceedings, provides that:

   Except as provided by subsection (e)(2) and notwithstanding any Act of
   Congress that confers exclusive jurisdiction on a court or courts other than
   the district courts, the district courts shall have original but not exclusive
   jurisdiction of all civil proceedings arising under title 11, or arising in or
   related to cases under title 11.

   The courts have elaborated on these three bases for bankruptcy jurisdiction as
follows:

   1. "Arising Under" Jurisdiction – "A matter arises under the Bankruptcy Code if
its existence depends on a substantive provision of bankruptcy law, that is, if it involves a
cause of action created or determined by a statutory provision of the Bankruptcy Code."

*In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010).

2. "Arising In" Jurisdiction – "A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.*

3. "Related to" Jurisdiction – "Congress did not delineate the scope of `related to' jurisdiction, but its choice of words suggests a grant of some breadth." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). A proceeding is "related to" a bankruptcy case if " '*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). "Related to" jurisdiction thus includes "suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, *supra,* 514 U.S. at 307 n. 5, 115 S.Ct. 1493. "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Id.,* 514 U.S. at 308, 115 S.Ct. 1493.  Hence, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 308 n. 6, 115 S.Ct. 1493.

Matters that "arise under or in Title 11 are deemed to be 'core' proceedings . . . ." *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995).  Title 28, United States Code, section 157(b)(2) sets out a non-exclusive list of core proceedings, including "matters concerning the administration of the estate," "allowance or disallowance of claims," "objections to discharges," "motions to terminate, annul, or modify the automatic stay," and "confirmation of plans."  Bankruptcy courts have the authority to hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11

1  . . . ." 28 U.S.C. § 157(b)(1); *Stern v. Marshall*, 564 U.S. 462, 475-76, 131 S.Ct. 2594,

2  2604, 180 L.Ed.2d 475 (2011).

3        The claims asserted in this removed action have a direct impact on the

4  administration of the bankruptcy, the property of the estate, and the potential distributions

5  to creditors.  The First Amended Complaint is effectively an adjudication of Sensible's

6  first-position lien on the Debtor's principal asset.  This adjudication is necessary to

7  determine not only the distribution to Sensible, but also the assets of the estate available

8  to unsecured creditors.  The Court ruled that the determination of FR's alleged interest in

9  the Property based upon a $119,000 purported loan was necessary for the administration

10  of the bankruptcy.  (See Minute Order of July 15, 2020, 20-ap-1060-VK, Document 11.)

11  Clearly, the determination of Sensible's admitted first-position security interest in the

12  Property based upon a loan in excess of $1,000,000 would be just as necessary a

13  determination for the administration of the bankruptcy as that of FR's purported loan.  It

14  is thus evident that he bankruptcy cannot be administered without the adjudication of the

15  First Amended Complaint and the Court has jurisdiction over the claims asserted therein.

16        Similarly, the Cross-Complaint has a direct impact on the administration of the

17  bankruptcy.  This Court has already determined to retain jurisdiction of the FR

18  Complaint.  (*Id*.)  The group of claims asserted in the Cross-Complaint as to loans against

19  the Property, which includes FR's purported loan, are related to that action: they involve

20  the same subject matter and the same evidence.  FR claims that Lev, Lioudkovski,

21  Feygenberg, Leizerovitz and Sensible are all responsible for the repayment of its alleged

22  loan.  (See, BK Document 9.)  The Cross-Complaint fundamentally claims that

23  Feygenberg, Leizerovitz and Sensible knew nothing of FR's purported loan and that they

24  are entitled to compensation and indemnity from the Debtor and others if they are found

25  to have any liability to FR (or any other unknown lender).[4]  (See Exhibit 2.)  In

26

27        [4]Except that Feygenberg, Leizerovitz and Sensible had already brought the Cross-Complaint against Lev and others in this action, they would have filed the same claims as

28  a cross-claim in the FR action.  (Burgee Decl., ¶ 7.)

1  adjudicating the FR Complaint, the Court is necessarily determining the responsibility of

2  Feygenberg, Leizerovitz and Sensible for FR's purported loan which is substantially what

3  is sought in the Cross-Complaint. These claims are inextricably intertwined with the FR

4  Complaint which this Court has already determined to be "related to" the bankruptcy and

5  ruled to retain jurisdiction. These claims in the Cross-Complaint are also at least

6  minimally "related to" the bankruptcy and the Court clearly has jurisdiction over these

7  claims.

8          Finally, this Court should retain jurisdiction of the improper foreclosure claims.

9  Preliminarily, determining whether the subject land has been properly reconveyed to the

10  former owner is a core matter since if the ostensible rescission of the Trustee's Deed is

11  found to be invalid, the Debtor would be the title holder of the land. Determining

12  whether or not Lev owns the land unquestionably effects the administration of the

13  bankruptcy. Beyond that, Leizerovitz will be making a claim for the consequential

14  damages sustained by virtue of the improper foreclosure no matter what. Lev held title to

15  the land for more than six months before recording the ostensible rescission deed during

16  which time substantial business opportunities were lost. Rescission requires prompt

17  action. At a minimum, the Court has "related to" jurisdiction over Leizerovitz's claim for

18  damages, which would need to be adjudicated in connection with the administration of

19  the estate. Leizerovitz's claim will diminish the pool of funds for other creditors.

20  Consequently, this Court has subject matter jurisdiction over the claims arising from

21  Lev's improper foreclosure of the Coachella land.

22

23      **B.      Mandatory Abstention Would Not Be Appropriate**.

24          28 U.S.C. § 1334(c)(2) does not apply to removed proceedings. *See In re Lazar*,

25  237 F.3d 967, 981 (9th Cir. 2001). Nevertheless, even if 28 U.S.C. § 1334(c)(2) applied

26  to this proceeding, all of the following elements would have to be met to mandate

27  abstention—

28  //

1          (1) A timely motion; (2) a purely state law question; (3) a non-core

2          proceeding § 157(c)(1); (4) a lack of independent federal jurisdiction absent

3          the petition under Title 11; (5) that an action is commenced in a state court;

4          (6) the state court action may be timely adjudicated; (7) a state forum of

5          appropriate jurisdiction exists.

6 *In re Gen. Carriers Corp.*, 258 B.R. 181, 189 (B.A.P. 9th Cir. 2001).

7          This Court has already found that timely adjudication of claims will not be

8 possible in the state court.  This Court stated in its order denying the remand of the FR

9 Complaint:  "As a result of the COVID-19 pandemic, California courts temporarily closed

10 and, upon reopening, will face a significant backlog of cases."  (See Minute Order of July

11 15, 2020, 20-ap-1060-VK, Document 11, page 5.)  This has been confirmed by the order

12 of the Presiding Judge of the Los Angeles Superior Court of July 10, 2020, that civil trials

13 will not be scheduled before November 16, 2020 and jury trials will not be scheduled

14 before February 2021.[5]   (Burgee Decl., Exhibit 3.)  Presumably, the cases that will be

15 scheduled starting in November 2020 or February 2021 are those where the trials had

16 already been set and were vacated because of the Covid pandemic.  Effectively, the State

17 Court's ability to schedule trials is subject to an 8 to 11 month delay.

18          This case has effectively had no discovery and is not even fully at issue.  (Burgee

19 Decl., ¶ 5.)  Cross-Defendants have proceeded with motions to dismiss which are pending

20 in this Court.  (*Id*.)  The Department where this matter was assigned in State Court is

21 currently setting the analogous motions in November.  (*Id*.)  Consequently, remanding

22 this action would mean pleading motions in November or December, and a trial mostly

23 likely in 2022.  (*Id*.)

24          In contrast, this Court has remained open for telephonic and video hearings and

25 does not have the backlog that the State Court has.  This Court continues to calendar

26 matters on a regular basis and is able to adjudicate this matter in a timely fashion. *See In*

27

28         [5]Albeit untimely, the Cross-Defendants are purportedly demanding a jury trial.

*re Smith*, 389 B.R. 902, 921 n.18 (Bankr. D. Nev. 2008) (noting that "there can be no timely adjudication" where the bankruptcy court can adjudicate the matter before the state court).  There is clearly no chance that the State Court would adjudicate this matter prior to this Court.  The elements of mandatory abstention cannot be satisfied and would not be appropriate.

### C.    The Court Should Not Elect to Remand This Action.

Courts generally consider up to fourteen factors in deciding whether to remand a case to state court. *In re Enron Corp.*, 296 B.R. 505, 508 (C.D. Cal. 2003).  Factors courts should consider in deciding whether to remand are:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than [section] 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) comity; and

1    (14) the possibility of prejudice to other parties in the action.

2    *Id.,* 508 n.2; *see also In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 738 (Bankr. C.D.

3    Cal. 2007).

4        Here, the factors weigh against remanding this action.  As discussed above, the

5    action will have a significant impact on administration of the estate.  (Factor 1.)  The

6    outcome of the claims in this action will dictate the amount of funds available for

7    distribution to creditors as well as the amounts of many of the creditor's claims.  There is

8    thus a notable degree of relatedness to the main bankruptcy case.  (Factor 6.)  In addition,

9    this action will not burden the bankruptcy court's docket; it is much more efficient for

10   this Court to adjudicate the various disputes related to the Property in one forum instead

11   of have multiple actions related to the Property proceed in State Court.  (Factor 9.)  The

12   claims in this action do not raise any difficult or unsettled questions of state law.  (Factor

13   3.)  Attempting to sever claims would be fruitless since the claims asserted in this action

14   are all related to core matters of bankruptcy administration (such as the determination of

15   creditor's claims).  (Factor 8.)

16       The removal of this action is not based upon any forum shopping.  (Factor 10.)

17   There have only been two hearings in the State Court on pleading motions, and the judge

18   that heard those motions was subsequently subject to a peremptory challenge by Cross-

19   Defendants in May pursuant to California Code of Civil Procedure Section 170.6.

20   (Burgee Decl., ¶ 6; and see BK Document 55, pages 265-269.)  As a result, this matter

21   was assigned to a different State Court judge, who has never had a single hearing in this

22   case of any nature.  (*Id.*)

23       There was not any timely demand for a jury trial in this Court.   (Factor 11.)  Local

24   Bankruptcy Rule ("LBR") 9027-1(e) provides: "Within 14 days after service of the notice

25   of removal, a party must comply with LBR 9015-2 to preserve any right to a trial byjury.";

26   see also LBR 9015-2(b) (setting forth requirements for demanding a jury trial).  This

27   action was removed to this Court on June 26, 2020.  Any demand for jury trial was due by

28   July 10, 2020.  Even extending that date based upon the mailing of the Notice of Removal

1    using the State Court extension of five days, a demand for jury trial was clearly due no

2    later than July 15, 2020.  No jury demand was made by that date.[6]  Even if, this matter

3    were to proceed to jury trial, the reference to District Court would only result in a slight

4    delay, nothing like the substantial delay that would be expected in State Court.

5      The fact that there are non-debtor Cross-Defendants does not mitigate toward

6    remand.  (Factor 12.)  The Supreme Court held that a court's "related to" jurisdiction

7    under 28 U.S.C. § 1334(b) is broader in a Chapter 11 context than in a liquidation under

8    Chapter 7.  *Celotex Corp. v. Edwards*, *supra,* 514 U.S. at 310, 115 S.Ct. 1493.  It should

9    be expected that a broader range of disputes between non-debtors will likely be

10   implicated when an ongoing business is attempting to reorganize under Chapter 11. *Id.* at

11   310-311.  As this proceeding is a Chapter 11 reorganization, the presence of non-debtor

12   parties should not be seen as grounds to remand when determination of the claims

13   involving such parties are critical to the administration of the bankruptcy.

14     Finally, the parties may be prejudiced if the Court remands this action because

15   resolution of this action likely will be delayed in State Court.  (Factor 14.)  The delay is

16   especially harmful with the shortened deadlines associated with subchapter V chapter 11

17   cases.  As discussed above, the matters set forth in this action would likely not be

18   resolved even by the trial court before 2022.  In fact, the only "prejudice" to Cross-

19   Defendants is not being able to delay the adjudication of the claims against them – hardly

20   a legitimate claim of prejudice.

21     In sum, there are no substantial reasons to remand this matter to State Court and

22   any such reasons are by far outweighed by the need to adjudicate the claims asserted in

23   this action in connection with the administration of the bankruptcy as previously

24   discussed.  Even to the extent that the claims may involve core and non-core claims, this

25   Court "can issue final rulings on pretrial matters, including claim-dispositive motions,

26   that do not require factual findings." *In re AWTR Liquidation Inc.*, 547 B.R. 831, 839

27

28     [6]Cross-Defendants RPT and Mike Kemel submitted an untimely jury demand on
     July 23, 2020.  (See AP Document 16.)

# DECLARATION OF JOHN G. BURGEE

I, JOHN G. BURGEE declare:

1.      I am an attorney at law duly qualified before this Court and am a principal of the law firm Burgee & Abramoff Professional Corporation, attorneys of record for Cross-Complainant Michael Leizerovitz.  I have personal knowledge of the facts stated herein and if called upon to testify, I can and will competently testify thereto.

2.      Submitted hereto as Exhibit 1 is a true and correct copy of the First Amended in this action which is found in bankruptcy ("BK") Document 55 at pages 105-131.  The State Court sustained a demurrer to the First Amended Complaint so that only the First and Second Causes of Action remain.  (See, BK Document 55, pages 219-225.)

3.      Submitted hereto as Exhibit 2 is a true and correct copy of the Cross-Complaint in this action which is found in bankruptcy ("BK") Document 55 at pages 236-253.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the order of the Presiding Judge of the Los Angeles Superior Court of July 10, 2020 regarding the scheduling of trials.

5.      This case has effectively had no discovery and is not even fully at issue. Cross-Defendants have proceeded with motions to dismiss which are pending in this Court.  I have today set a demurrer in the Department where this matter was assigned in State Court.  That Department is currently setting demurrers in November.  Consequently, I believe that remanding this action would mean pleading motions in November or December, and a trial mostly likely in 2022.

6.      There have only been two hearings in the State Court on pleading motions – demurrers to the Complaint and First Amended Complaint – and the judge that heard those motions was subsequently subject to a peremptory challenge by Cross-Defendants in May pursuant to California Code of Civil Procedure Section 170.6.  (See BK Document 55, pages 265-269.)  As a result, this matter was assigned to a different State Court judge, who has never had a single hearing in this case of any nature.

7.    I filed an answer for Feygenberg, Leizerovitz and Sensible in the *FR LLC v. Lev Investments, LLC* adversary action in June.  The Cross-Complaint in this action was filed in March prior to the filing of this bankruptcy proceeding.  Consequently, when I was preparing the answer to the FR Complaint, this Cross-Complaint was already pending against Lev and Lisitsa seeking indemnity and damages by my clients with regard to purported loans such as the one claimed by FR.  Including a cross-claim with the answer to the FR Complaint would have been redundant.  However, had the Cross-Complaint in this action not already have been filed, I would have filed the claims related to FR's loans set forth in the Cross-Complaint as a cross-claim in this action.  It was my plan prior to the filing of this bankruptcy to seek to relate the FR action and this action in the State Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 29, 2020, at Woodland Hills, California.


                                                /s / John G. Burgee
                                              JOHN G. BURGEE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

FIRST AMENDED COMPLAINT

Thomas D. Sands, Esq.        SBN 279020
THE SANDS LAW GROUP, APLC
205 S. Broadway Ste 903
Los Angeles, California 90012
Telephone:      (213) 788-4412
Facsimile:      (888) 623-8382

Attorney for Lev Investments, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES,

NORTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| LEV INVESTMENTS, LLC,       ) | Case No.: 19VECV00878 |
|       ) | |
|     Plaintiff,       ) | FIRST AMENDED VERIFIED COMPLAINT |
|       ) | FOR: |
|     vs.       ) | |
|       ) | 1. BREACH OF IMPLIED COVENANT |
| RUVIN FEYGENBERG; MICHAEL       ) | AGAINST ENCUMBRANCES |
| LEIZEROVITZ; SENSIBLE CONSULTING       ) | 2. USURY |
| AND MANAGEMENT, INC.; MING ZHU,       ) | 3. QUIET TITLE |
| LLC; and DOES 1 through 100, inclusive,       ) | 4. DECLARATORY RELIEF |
|       ) | |
|     Defendants.       ) | |
|       ) | DEMAND IN EXCESS OF $25,000.00 |

Plaintiff, Lev Investments, LLC, hereinafter Plaintiff, files its Complaint herein against

Defendants, RUVIN FEYGENBERG; MICHAEL LEIZEROVITZ; SENSIBLE CONSULTING

AND MANAGEMENT, INC.; MING ZHU, LLC; and DOES 1 through 100, inclusive,

hereinafter collectively Defendants, and each of them, as follows:

## **PARTIES**

1.      Plaintiff is a California limited liability company, and at all times relevant hereto,

was doing business in the county of Los Angeles, state of California.

2.      Upon information and belief, Defendant, RUVIN FEYGENBERG, hereinafter Feygenberg, is an individual, and at all relevant times herein, doing business in the county of Los Angeles, state of California.

3.      Upon information and belief, Defendant, MICHAEL LEIZEROVITZ, hereinafter Leizerovitz, is an individual, and at all relevant times herein, doing business in the county of Los Angeles, state of California.

4.      Upon information and belief, Defendant SENSIBLE CONSULTING AND MANAGEMENT, INC., hereinafter Sensible Consulting, at all times relevant hereto, a California corporation doing business in the county of Los Angeles, state of California.

5.      Upon information and belief, Defendant MING ZHU, LLC, hereinafter Ming Zhu, at all times relevant hereto, a California limited liability company doing business in the county of Los Angeles, state of California.

6.      The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of the Defendants named herein as DOE 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names, and Plaintiff will amend this Complaint to set forth their true names and capacities when the same are ascertained. Plaintiff is informed and believes and thereon alleges that Defendants DOE 1 through 50, inclusive, and each of them, claim some right, title, estate, lien or interest in the Property adverse to Plaintiff's ownership and that such claims constitute clouds on Plaintiff's title thereto.

7.      The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants DOE 51 through 100, inclusive, are unknown to Plaintiff, which therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such Defendants when the same are ascertained. Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant is legally responsible in some manner for the events referred to and legally caused the damages to Plaintiff as alleged herein.

8.      Plaintiff is informed and believes and thereon alleges that each DOE Defendant claims some interest in the Property and is responsible in some manner for the occurrences herein alleged, and that Plaintiff hereby names each DOE Defendant as such that its interest, in any, shall be subject to the judgment rendered herein. Each reference in this Complaint to any Defendant, refers to all Defendants sued under fictitious names.

9.      Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, each of the Defendants sued under fictitious names, was the agent or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of this agency or employment.

10.     There exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants Leizerovitz and Sensible Consulting, such that any individuality and separateness between these defendants have ceased, and Sensible Consulting is the *alter ego* of Defendant Leizerovitz. On information and belief, Sensible Consulting is, and at all times herein mentioned was, a mere shell and sham without capital, assets, stock and/or stockholders. Sensible Consulting was conceived, intended and used by Defendant Leizerovitz as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of Defendant Leizerovitz. On information and belief, Defendant Sensible Consulting is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by the defendant and the risks of loss, its capitalization was illusory or trifling. Adherence to the fiction of the separate existence of Sensible Consulting would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

## JURISDICTION AND VENUE

11.     The amount of controversy herein, exclusive of attorneys' fees, interest and costs, does exceed the sum of $25,000.00.

12.     Venue is proper in this judicial district as the Property that gave rise to this action is located in this judicial district.

## **GENERAL ALLEGATIONS**

### (**Facts Common to All Causes of Action**)

13.     Plaintiff incorporates by reference the allegations of paragraphs 1-12, *supra*, as though fully set forth herein.

14.     This lawsuit concerns the real property commonly known as 13854 Albers Street, Sherman Oaks, California 91401, hereinafter the Property, and legally known as:

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

THE NORTH 190 FEET OF THE EAST 99 FEET OF THE WEST 110 FEET OF LOT 103 TRACT NO. 1000, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGES 1 TO 34, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 2247-013-001.

15.     Plaintiff is in possession of the Property.

16.     Plaintiff alleges that on or about January 31, 2019, Defendants Feygenberg and Leizerovitz signed a Grant Deed, whereby all right, title and interest in the Property was transferred to Plaintiff. See **Exhibit A**, a true and correct copy of the Grant Deed, attached hereto and incorporated herein by reference. In consideration for the Grant Deed, Plaintiff gave security to Defendants Feygenberg, Leizerovitz and Sensible Consulting, which is evidenced by the Deed of Trust. See **Exhibit B**, a true and correct copy of the Deed of Trust, attached hereto and incorporated herein by reference. The consideration was the promise of repayment of the loan that was over a million dollars (the exact amount is in dispute). The Grant Deed was not a deed of gift based on love and affection.

17.     Thus, Feygenberg also gave a loan that is secured with the Property. See **Exhibit B**, a true and correct copy of the Deed of Trust, attached hereto and incorporated herein by reference.

18.     Sensible Consulting, whose principal, on information and belief, is Leizerovitz, also gave a loan that is secured with the Property. See **Exhibit B**, a true and correct copy of the Deed of Trust, attached hereto and incorporated herein by reference.

19.     Under the terms of the loan agreement, interest payment on the principal were to be equivalent to 23.00% per annum.

20.     The interest payment terms of the contract are usurious and violate the California Constitution Article XV, Section 1(2), which prescribes that a contract for a loan for any use other than primarily for personal, family, or household purposes may not provide for an interest rate that exceeds 10.00% per annum.

21.     On information and belief, on or about March 29, 2019, Feygenberg assigned all of his interest in the Deed of Trust to Sensible Consulting. See **Exhibit C**, a true and correct copy of the Assignment, attached hereto and incorporated herein by reference.

<u>**FIRST CAUSE OF ACTION**</u>

(**Breach of Implied Covenant against Encumbrances**)

(Against All Defendants, except Sensible Consulting and Ming Zhu)

22.     Plaintiff incorporates by reference the allegations of paragraphs 1-21, *supra*, as though fully set forth herein.

23.     Pursuant to Civil Code § 1113, Defendants, and each of them, covenanted that the estate granted by the Grant Deed was at the time of the execution free from encumbrances, done, made or suffered by Defendants, and each of them, or any person claiming under Defendants, and each of them, including taxes, assessments, and all liens on the Property, and that implied covenant was not restrained or in any way affected by any express terms contained in the deed.

24.     At the time of the making and delivery of the Grant Deed, the Property was not free from all encumbrances, but, on the contrary, Defendants, and each of them, before that time owed property taxes and a judgment.

25.     On March 4, 2013, in the Superior Court of California, County of San Francisco, judgment was rendered against Defendants, and each of them, in the sum of $169,885.38, in an action in which Ming Zhu was plaintiff, and Defendants, and each of them, in this action were defendants, that action being entitled *Ming Zhu v. San Francisco Medical Imaging, et al.*, and being numbered CGC-11-516808, which judgment was entered at the same court, at the same time, and which judgment constituted a lien on the Property described above pursuant to the

Abstract of Judgment, recorded as instrument number 20130597359 in the Official Records of the County of Los Angeles, on April 22, 2013. See **Exhibit D**, a true and correct copy of the Abstract, attached hereto and incorporated herein by reference.

26.    For a further breach Plaintiff alleges that at the time of the execution and delivery of the Grant Deed from Defendants, and each of them, the Property was subject to taxes duly assessed prior to the execution of the deed, charged and levied on the Property by the City and County of Los Angeles, which tax was then due and unpaid and at the time of the delivery of the Grant Deed constituted a lien and encumbrance by law on the Property.

27.    By reason of the breach of covenant against encumbrances of Defendants, and each of them, Plaintiff is requesting an offset against Defendants, and each of them, and any and all other damages and costs according to proof.

## SECOND CAUSE OF ACTION

### (**Usury**)

(Against All Defendants, except Ming Zhu)

28.    Plaintiff incorporates by reference the allegations of paragraphs 1-27, *supra*, as though fully set forth herein.

29.    Plaintiff entered into a loan agreement with Defendants, and each of them. Specifically, Defendants Feygenberg and Leizerovitz were parties to this loan agreement.

30.    Beginning from about March 2019, Plaintiff requested a payoff of the loan, Defendants, and each of them, presented numerous payoff statements demanding repayment of the loan with a usurious interest rate. The payoff demands of Defendants, and each of them, were in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1.

31.    An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, concerning their respective rights and duties in that Plaintiff contends that it is only obligated to pay Defendants, and each of them, the principal amount of the loan without interest, and that the interest rate specified in the contract is usurious and should be declared null and void, whereas Defendants, and each of them, disputes this contention and

contends that Plaintiff must continue paying both the principal amount and the specified interest rate.

32.     Plaintiff desires a judicial determination of its rights and duties, and a declaration that the interest rate provisions of the contract are null and void, pursuant to the California Constitution, Article XV, Section 1 and Section 2 of the Statutes of 1919, page lxxxiii.

33.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its rights and duties under the contract.

**THIRD CAUSE OF ACTION**

(**Quiet Title**)

(Against All Defendants)

34.     Plaintiff incorporates by reference the allegations of paragraphs 1-33, *supra*, as though fully set forth herein.

35.     The basis of Plaintiff's title to or interest in the Property is Plaintiff's Grant Deed granting Plaintiff title in fee simple.

36.     Plaintiff is informed and believes that Defendants, and each of them, claim an interest in the Property adverse to Plaintiff.

37.     Plaintiff is informed and believes and thereby alleges that Defendants, and each of them, claim an interest adverse to Plaintiff in the Property as the holder of a lien representing an unsatisfied judgment against Defendants, and each of them, a former owner of the Property. The Abstract of Judgment was recorded on April 22, 2013, in the Official Records of the County of Los Angeles. See **Exhibit D**. Some of the unknown defendants, as assignees and successors of Defendants, and each of them, claim interests in the Property adverse to Plaintiff's title.

38.     Plaintiff is informed and believes and thereby alleges that Defendants, and each of them, claim an interest adverse to Plaintiff in the Property as the holders of a lien that they are refusing to give the correct payoff amount. The Deed of Trust was recorded on March 22, 2019, in the Official Records of the County of Los Angeles. See **Exhibit B**. Some of the unknown defendants, as assignees and successors of Defendants, and each of them, claim interests in the Property adverse to Plaintiff's title.

FIRST AMENDED COMPLAINT

39.     The adverse claims are all without any right whatever, and no such Defendants, and each of them, have any right, title, estate, lien, or interest whatever in the Property or any part of it.

40.     Plaintiff seeks to quiet title to the Property, against all adverse claims of all claimants, known and unknown, as of the date this Complaint was filed.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

(Against All Defendants)

41.     Plaintiff incorporates by reference the allegations of paragraphs 1-40, *supra*, as though fully set forth herein.

42.     An actual controversy exists between Plaintiff and Defendants, and each of them, regarding their respective rights and obligations with respect to the Property, Grant Deed, Deed of Trust, Assignment, and Abstract.

43.     Plaintiff asserts that Plaintiff's title to the Property is fee simple and Plaintiff holds title free and clear of any liens.

44.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, deny that Plaintiff holds title free and clear of any liens and, instead, contend that Plaintiff has to repay the judgment evidenced by the Abstract (Exhibit D), pay taxes and pay the usurious interest rate on the loan that is evidenced by the Deed of Trust (Exhibit B), not giving the correct payoff amount.

45.     Plaintiff desires a judicial determination of the respective rights and liabilities of Plaintiff and Defendants, and each of them, with respect to the Property, which judicial determination is necessary and appropriate in order to permit Plaintiff to proceed to enforce its rights as to the Property.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

FIRST AMENDED COMPLAINT

## ON THE FIRST CAUSE OF ACTION

1.  For offset;

2.  For the sum according to proof, but not less than $300,000;

## ON THE SECOND CAUSE OF ACTION

For the assessment of treble damages against Defendants, and each of them, in the sum according to proof, but not less than $355,000;

For a declaration that the interest rate provisions of the contract are null and void and of no force and effect;

For a declaration that no interest is due;

For a declaration that Plaintiff repay the principal amount only, minus any offset for the judgment and property taxes;

## ON THE THIRD CAUSE OF ACTION

For a judgment that Plaintiff is the owner in fee simple of the Property, and that no Defendants, and each of them, have any interest in the Property adverse to Plaintiff;

## ON THE FOURTH CAUSE OF ACTION

For a judgment that Plaintiff's title is fee simple, free of any liens;

For a judgment declaring the validity of the judgment evidenced by the Abstract;

For a judgment declaring that Plaintiff does not owe the judgment evidenced by the Abstract;

For a judgment compelling Defendants, and each of them, to offset the payment of the judgment evidenced by the Abstract and taxes from what is owed to Defendants, and each of them, by Plaintiff;

For a permanent injunction, enjoining Defendants, and each of them, and their agents, servants and employees, and all persons acting under, in concert with, or for them from seeking repayment of the judgment evidenced by the Abstract from Plaintiff and from seeking usurious interest;

FIRST AMENDED COMPLAINT

1   For a permanent injunction, enjoying Defendants, and each of them, and their agents,

2   servants and employees, and all persons acting under, in concert with, or for them to offset the

3   amount due at payoff from the principal loan amount;

4   For damages in the sum of $655,000, plus damages in such further sums as may be

5   sustained and as are ascertainable before final judgment in this action.

6

7                              **ON ALL CAUSES OF ACTION**

8   For costs of suit incurred in this action; and

9   For such other and further relief as the Court deems just and proper.

10

11                                      Respectfully submitted,

12  Dated: September 27, 2019          THE SANDS LAW GROUP, APLC

13

14                              By  *Thomas D. Sands*

15                                  Thomas D. Sands, Esquire
                                    Attorney for Lev Investments, LLC

16

17

18                              **VERIFICATION**

19  I, Dmitri Lioudkovski, am the Manager of the Plaintiff, the current owner of the Property

20  in the above-entitled proceeding. I have read the above First Amended Verified Complaint and

21  know the contents thereof. The same is true of my own knowledge, except as to those matters

22  which are therein alleged on information and belief, and as to those matters, I believe them to be

23  true.

24  I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct.

26

27  Date: September 27, 2019          By

28                                      Dmitri Lioudkovski, Manager

---

                                        10
                              **FIRST AMENDED COMPLAINT**



**This page is part of your document - DO NOT DISCARD**



## 20190258567



**Pages:**
**0005**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/22/19 AT 02:38PM**

|  |  |
|---|---|
| FEES: | 51.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 126.00 |

**PCOR SURCHARGE $20.00**



**L E A D S H E E T**



201903220930027

**00016397730**

009707986

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**



EXHIBIT A

RECORDING REQUESTED BY
Lev Investments, LLC

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

**Lev Investments, LLC**
**PO Box 16646**
**Beverly Hills, CA 90209**



03/22/2019

*20190258567*

# GRANT DEED

**APN NO.**     **2247-013-001**

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $_____0.00_____ CITY TAX $ gift R&T §§ 11911, 11930, *et seq.*
 □ computed on full value of property conveyed, or □ computed on full value less value of liens or
 encumbrances remaining at time of sale,
 □ Unincorporated area:  □ City of _____, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Lev Investments, LLC, a California limited liability company, as to an undivided**
**50.00% Interest, Ruvin Feygeberg, an individual, as to an undivided 25.00% interest**
**and Michael Leizerovitz, an individual, as to an undivided 25.00% interest,**

hereby GRANT(S) to

**Lev Investments, LLC, a California limited liability company**

the following described real property in the County of Los Angeles, State of California:

SEE **EXHIBIT "A"** ATTACHED HERETO AND MADE A PART HEREOF

Commonly known as 13854 Albers Street, Sherman Oaks, CA 91401

Lev Investments, LLC

Dated____1/31/19____

_____
Dmitri Lioudkovski, Manager

Dated____1-31-19____

_____
Ruvin Feygeberg, an individual

Dated____1/31/19____

_____
Michael Leizerovitz, an individual

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On Janvary 31, 2019 before me, Brandon Alexander Guerrero as Notary Publ (here insert name and title of the officer), personally appeared Rivin Fayrberg and Dimitri Lioydkovski, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)



BRANDON ALEXANDER GUERRERO
Notary Public – California
Los Angeles County
Commission # 2221730
My Comm. Expires Nov 12, 2021

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached and not the truthfulness, accuracy, or
validity of that document.

State of California

County of Los Angeles

On January 31, 2019 before me Brandon Alexander Guerrero ; Notary Public (here insert name
and title of the officer), personally appeared Michael Leizerovitz , who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)



BRANDON ALEXANDER GUERRERO
Notary Public – California
Los Angeles County
Commission # 2221730
My Comm. Expires Nov 12, 2021

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

THE NORTH 190 FEET OF THE EAST 99 FEET OF THE WEST 110 FEET OF LOT 103 TRACT NO. 1000, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGES 1 TO 34, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 2247-013-001



**This page is part of your document - DO NOT DISCARD**



# 20190258568



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/22/19 AT 02:38PM**

| | |
|---|---|
| FEES: | 53.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 203.00 |



**LEADSHEET**



201903220930027

**00016397731**



009707986

**SEQ:**
**02**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E528330

EXHIBIT B

RECORDING REQUESTED BY:

**Ruvin Feygenberg and**
**Sensible Consulting and Management, Inc.**

WHEN RECORDED MAIL TO:

Ruvin Feygenberg
17777 Ventura Blvd.
Encino, CA 91316



03/22/2019

*20190258568*

ORDER NO.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

APN: 2247-013-001

**This Deed of Trust,** made this, between Lev Investments, LLC, a California limited liability company, herein called **TRUSTOR,** whose address is PO Box 16646, Beverly Hills, CA 90209,

**Real Property Trustee, Inc.,** a Delaware Corporation, herein called **TRUSTEE,** and

Ruvin Feygenberg, an individual, as to an undivided 50.00% interest, and Sensible Consulting and Management, Inc., a California corporation, as to an undivided 50.00% interest, herein called **BENEFICIARY,**

Witnesseth:  That Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that property in Los Angeles County, California, described as:

**For complete legal description, see exhibit "A" attached hereto.**

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**  1.  Performance of each agreement of Trustor incorporated by reference or contained herein.  2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,257,675.00 executed by Trustor in favor of Beneficiary by order.  3.  Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**  By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded under date,  in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 348 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 689 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| El Dorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 184 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glen | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 386 |
| Humboldt | 657 | 527 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2, Book 1961, Page 183887 | | | | |

FOR SIGNATURE(S) SEE SHORT FORM DEED OF TRUST SIGNATURE PAGE ATTACHED HERETO AND MADE A PART HEREOF.

## SHORT FORM DEED OF TRUST SIGNATURE(S) PAGE

ORDER NO.

(which provisions, identical in all counties, are printed on the reverse hereof) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Lev Investments, LLC

X _____      Date: _01/31/19._

Dmitri Lioudkovski, Manager

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF ___LOS ANGELES___

On _January 31, 2019_ before me, _Brandon Alexander Guerrero_____, a Notary Public, personally appeared _Dmitri Lioudkovski_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

BRANDON ALEXANDER GUERRERO
Notary Public – California
Los Angeles County
Commission # 2221730
My Comm. Expires Nov 12, 2021

(Seal)

SHORT FORM DEED OF TRUST CONTINUED ON NEXT PAGE

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

THE NORTH 190 FEET OF THE EAST 99 FEET OF THE WEST 110 FEET OF LOT 103 TRACT NO. 1000, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGES 1 TO 34, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSOR'S PARCEL NUMBER: 2247-013-001


**This page is part of your document - DO NOT DISCARD**




## 20190286165



| Pages: |
| 0003 |

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/02/19 AT 01:58PM**

| FEES: | 23.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |





L E A D S H E E T



201904020930021

00016442086



009728235

**SEQ:
03**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**



E59835M

EXHIBIT C

Recording Requested By            )
                                  )
John G. Burgee                    )
                                  )
When Recorded, Mail To            )
                                  )
Burgee & Abramoff, PC             )
20501 Ventura Boulevard, Suite 262 )
Woodland Hills, California 91364  )
                                  )
_____ )        (Space above this line for recorder's use)

**04/02/2019**

**\*20190286165\***

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned Ruvin Feygenberg hereby grants, transfers, and assigns to Sensible Consulting and Management, Inc., a California corporation, all of his beneficial interest under that certain Deed of Trust dated January 31, 2019 executed by Lev Investments, LLC, a California limited liability company, to Real Property Trustee, Inc., a Delaware corporation, Trustee, and recorded as Instrument Number 20190258568, on March 22, 2019, of the Official Records in the County Records Office of Los Angeles County, State of California, describing the following real property:

THE NORTH 190 FEET OF THE EAST 99 FEET OF THE WEST 110 FEET OF LOT 103 TRACT NO. 1000, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 19 PAGES 1 TO 34, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Commonly known as:     13854 Albers Street, Sherman Oaks, California 91401

APN:  2247-013-001.

TOGETHER WITH the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: March 29, 2019

_____
Ruvin Feygenberg

MAIL TAX STATEMENTS AS SHOWN ABOVE

1

CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                          }
                                             }SS.
COUNTY OF LOS ANGELES                        }

    On _3/29/2019_ , before me, _Sandy A. Cordova, Notary Public_(here insert name and title of the officer), personally appeared _Ruvin Feygenberg_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Sandy A. Cordova_

SANDY A. CORDOVA
Notary Public - California
Los Angeles County
Commission # 2245301
My Comm. Expires Jun 22, 2022

(Seal)

2



**This page is part of your document - DO NOT DISCARD**



# 20130597359

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/22/13 AT 12:11PM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 35.00 |



**L E A D S H E E T**



201304220760110

**00007551515**



004791120

**SEQ:
01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

E408071

**EXHIBIT D**

**RECORDING REQUESTED BY**

**WHEN RECORDED MAIL TO**

✓ **NAME** M. DAVID DeSMTS

✓ **MAILING** 1230 Broadway, SuITE
                                          1032
✓ **CITY, STATE ZIP CODE**
   OAKLAND, CA   94612



04/22/2013

*20130597359*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**TITLE(S)**

✓ ABSTRACT OF JUDGMENT

**EJ-001**

3

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, address, State Bar number, and telephone number)
Recording requested by and return to    510-465-5212

M. David DeSantis (132629)
Gianunzio & DeSantis LLP
130 Broadway
Suite 1032
Oakland, CA 94612

[✓] ATTORNEY FOR   [✓] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS
CITY AND ZIP CODE  San Francisco, CA 94102
BRANCH NAME  Civil

FOR RECORDER'S USE ONLY

PLAINTIFF:  Ming Zhu, LLC

DEFENDANT:  San Francisco Medical Imaging, Inc., et al.

CASE NUMBER:
CGC-11-516808

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**   [ ] Amended

FOR COURT USE ONLY

1. The [✓] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's

   Name and last known address

   RUVIN FEYGENBERG
   18044 VALLEY VISTA BLVD.
   ENCINO, CA 91316

   b. Driver's license no. [last 4 digits] and state:  xxxx9366 CA   [ ] Unknown
   c. Social security no. [last 4 digits]:  xxx-xx-5670   [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to (name and address):  Veriza Doe, Sub
      17779 Ventura Blvd., Encino, CA 91316

2. [✓] Information on additional judgment
      debtors is shown on page 2.

3. Judgment creditor (name and address):
   Ming Zhu, LLC, c/o M. David DeSantis, Esq.
   1330 Broadway, Ste. 1032, Oakland, CA 94612

Date: March 6, 2013
M. David DeSantis

(TYPE OR PRINT NAME)

4. [ ] Information on additional judgment
      creditors is shown on page 2.

5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

▶

(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 169,885.38
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on (date): March 4, 2013
   b. Renewal entered on (date):
9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
       is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. [✓] not been ordered by the court.
    b. [ ] been ordered by the court effective until
       (date):

12. a. [✓] I certify that this is a true and correct abstract of
       the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

**CLERK OF THE COURT**

This abstract issued on (date):

**MAR 1 4 2013**

Clerk, by  **RAYMOND WONG**    Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190

4

| PLAINTIFF: Ming Zhu, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT: San Francisco Medical Imaging, Inc., et al. | CGC-11-516808 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*     14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.            Name and last known address             17.            Name and last known address

San Francisco Medical Imaging, Inc.
815 Hyde Street, Suite 100
San Francisco, CA 94109

Driver's license no. [last 4 digits]
and state:                                    ☑ Unknown     Driver's license no. [last 4 digits] and state:     ☐ Unknown

Social security no. [last 4 digits]:          ☑ Unknown     Social security no. [last 4 digits]:     ☐ Unknown

Summons was personally served at or mailed to *(address):*     Summons was personally served at or mailed to *(address):*

Max Frid, Agent
8159 Santa Monica Blvd., Suite 200
West Hollywood, CA 90046

18.            Name and last known address             19.            Name and last known address

Driver's license no. [last 4 digits]
and state:                                    ☐ Unknown     Driver's license no. [last 4 digits] and state:     ☐ Unknown

Social security no. [last 4 digits]:          ☐ Unknown     Social security no. [last 4 digits]:     ☐ Unknown

Summons was personally served at or mailed to *(address):*     Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

---

EJ-001 [Rev. January 1, 2006]               **ABSTRACT OF JUDGMENT—CIVIL**               Page 2 of 2
                                             **AND SMALL CLAIMS**

**POS-030**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Thomas D. Sands, Esq. SBN 279020<br>THE SANDS LAW GROUP, APLC<br>205 S. Broadway Ste 903<br>Los Angeles, CA 90012<br><br>TELEPHONE NO.: (213) 788-4412 FAX NO. *(Optional):* (888) 623-8382<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Lev Investments, LLC | *FOR COURT USE ONLY* |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
| STREET ADDRESS: 6230 Sylmar Avenue |
| MAILING ADDRESS: 6230 Sylmar Avenue |
| CITY AND ZIP CODE: Van Nuys 91401 |
| BRANCH NAME: Northwest Judicial District, Van Nuys Courthouse East |

| |
|---|
| PETITIONER/PLAINTIFF: LEV INVESTMENTS, LLC |
| RESPONDENT/DEFENDANT: RUVIN FEYGENBERG; MICHAEL LEIZEROVITZ; SENSIBLE CONSULTING et al. |

| | |
|---|---|
| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER:<br>19VECV00878 |

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   205 S. Broadway Ste 903
   Los Angeles, CA 90012

3. On *(date):* 09/27/2019 I mailed from *(city and state):* Los Angeles, California
   the following **documents** *(specify):*
   FIRST AMENDED COMPLAINT

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: John G. Burgee, Esq. Timothy Krantz, Esq.
   b. **Address** of person served:
   BURGEE & ABRAMOFF P.C. LAW OFFICE OF TIMOTHY KRANTZ
   20501 Ventura Blvd., Ste 262 2082 Michelson Dr., Ste 212
   Woodland Hills, CA 91364 Irvine, CA 92612

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: September 27, 2019

Thomas D. Sands, Esq. ▶ *Thomas D. Sands*
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM) (SIGNATURE OF PERSON COMPLETING THIS FORM)

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005] | **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1013, 1013a<br>*www.courtinfo.ca.gov* |

Electronically FILED by Superior Court of California, County of Los Angeles on 09/25/2019 12:38 PM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Boyadzhyan,Deputy Clerk

**JOHN G. BURGEE, ESQ. (State Bar No. 132129)**
**BURGEE & ABRAMOFF, P.C.**
20501 Ventura Boulevard, Suite 262
Woodland Hills, California  91364
Tel: (818) 264-7575
Fax: (818) 264-7576

Attorneys for Defendants RUVIN FEYGENBERG,
MICHAEL LEIZEROVITZ and SENSIBLE
CONSULTING AND MANAGEMENT, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

NORTHWEST DISTRICT

| | |
|---|---|
| LEV INVESTMENTS, LLC, | CASE NO. 19VECV00878 |
| Plaintiff, | CROSS-COMPLAINT OF RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ AND SENSIBLE CONSULTING AND MANAGEMENT, INC. FOR DAMAGES AND EQUITABLE RELIEF: |
| v. | |
| RUVIN FEYGENBERG, et al., | |
| Defendants. | 1. BREACH OF CONTRACT<br>2. BREACH OF FIDUCIARY DUTY |
| RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ, and SENSIBLE CONSULTING AND MANAGEMENT, INC. | 3. CONCEALMENT<br>4. INDEMNITY<br>5. DECLARATORY RELIEF<br>6. QUIET TITLE<br>7. CANCELLATION OF INSTRUMENTS<br>8. WRONGFUL FORECLOSURE |
| Cross-Complainants, | 9. DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| LEV INVESTMENTS, LLC, DMITRI LIOUDKOVSKI (aka Dmitri Ludkovski), YEVGENIYA LISITSA (aka Y. GINA LISITSA), LISITSA LAW, INC., REAL PROPERTY TRUSTEE, INC., MIKE KEMEL, and ROES 1 to 50, | |
| Cross-Defendants. | |

Cross-Complainants RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ, and SENSIBLE

CONSULTING AND MANAGEMENT, INC. allege:

1

CROSS-COMPLAINT

# PARTIES

1.    Cross-Complainants RUVIN FEYGENBERG and MICHAEL LEIZEROVITZ are individuals who reside in the State of California.

2.    Cross-Complainant SENSIBLE CONSULTING AND MANAGEMENT, INC. ("SENSIBLE") is, and was at all times material hereto, a corporation organized and existing under the laws of the State of California.

3.    Cross-Defendants DMITRI LIOUDKOVSKI (also known as Dmitri Ludkovski), YEVGENIYA LISITSA (also known as Y. GINA LISITSA), and MIKE KEMEL are individuals who conducts business in Southern California and the County of Los Angeles.  Cross-Defendants are informed and believe and thereon allege that LIOUSKOVSKI, LISITSA and KEMEL also maintain residences in the County of Los Angeles, State of California.

4.    Cross-Defendant LEV INVESTMENTS, LLC ("LEV") is, and was at all times material hereto, a limited liability company organized and existing under the laws of the State of California.  LIOUDKOVSKI is the sole manager and principal of LEV.

5.    Cross-Defendant LISITSA LAW, INC. is and was at times material hereto, a corporation organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Cross-Complainants are informed and believe and thereon allege that LISITSA is and was a shareholder, director and/or officer of LISITSA LAW, INC., and that LISITSA LAW, INC. is LISITSA's law corporation.  (LISITSA and LISITSA LAW, INC. are collectively referred to herein as the "LISITSA PARTIES.")

6.    Cross-Defendant REAL PROPERTY TRUSTEE, INC. (the "TRUSTEE") is, and was at all times material hereto, a Delaware corporation doing business in the County of Los Angeles, and it is currently qualified to do business in the State of California.  Cross-Complainants are informed and believe and thereon allege that KEMEL is the sole officer, director and principal of RPT.

7.    The names and capacities, whether individual, corporate, associate or otherwise, of Cross-Defendants named herein as ROES 1 to 50, inclusive, are unknown to Cross-Complainants, who therefore sue such Cross-Defendants by such fictitious names.  Cross-Complainants will amend

2

this Cross-Complaint when the true names and capacities of such Cross-Defendants have been ascertained.  Cross-Complainants further allege that each such Cross-Defendant is responsible in some manner for the actions alleged herein and further for the damages suffered by Cross-Complainants.

8.    Cross-Complainants are informed and believe and thereon allege that there exists, and at all times relevant herein there existed, a unity of interest and ownership between Cross-Defendants LIOUDKOVSKI, LEV and ROES 1 to 10 (collectively the "LEV PARTIES"), such that any individuality and separateness between these parties has ceased.  Additionally, Cross-Complainants are informed and believe and thereon allege that LEV and ROES 1 to 5 are undercapitalized, failed to observe corporate formalities, are mere shell entities, and/or are instrumentalities of LIOUDKOVSKI and ROES 6 to 10.  Cross-Complainants therefore are informed and believe and thereon allege that the LEV PARTIES are the alter egos of each other and it would be unjust not to hold each of these parties liable for the claims against any of the other parties alleged herein.

9.    Cross-Complainants are informed and believe and thereon allege that there exists, and at all times relevant herein there existed, a unity of interest and ownership between Cross-Defendants KEMEL, RPT and ROES 11 to 20 (collectively the "RPT PARTIES"), such that any individuality and separateness between these parties has ceased.  Additionally, Cross-Complainants are informed and believe and thereon allege that RPT and ROES 11 to 15 are undercapitalized, failed to observe corporate formalities, are mere shell entities, and/or are instrumentalities of KEMEL and ROES 16 to 20.  Cross-Complainants therefore are informed and believe and thereon allege that the RPT PARTIES are the alter egos of each other and it would be unjust not to hold each of these parties liable for the claims against any of the other parties alleged herein.

## GENERAL ALLEGATIONS

10.    In or about December 2018, FEYGENBERG and LEIZEROVITZ entered into a business transaction with LEV for LEV's acquisition of a real property located in Sherman Oaks, California consisting of a single-family dwelling (the "Property").  The parties' plan was to purchase a defaulted Promissory Note secured by a first position Deed of Trust for the Property which was in

3

1    the process of being foreclosed, and to complete the non-judicial foreclosure in order for LEV to

2    obtain title to the Property.  FEYGENBERG's and LEIZEROVITZ's role in the transaction was

3    principally to act as lenders who were initially secured by having an interest in the purchased Note

4    and after foreclosure, were to be secured by a first-position lien against the Property.  Pursuant the

5    principal written agreement among the parties for this venture, which was prepared by LISITSA (the

6    "CONTRACT"), LEV was supposed to contribute $1,022,500 to the purchase of the Note and Deed

7    of Trust.  The LISITSA PARTIES acted as counsel for all parties to the CONTRACT.

8         11.    Unbeknownst to FEYGENBERG and LEIZEROVITZ, LIOUDKOVSKI was making

9    secret deals with others to obtain the funds LEV needed to contribute to the purchase of the Note

10   and Deed of Trust (the "Secret Loans").  LIOUDKOVSKI purported to make these deals on behalf

11   of LEV, FEYGENBERG and LEIZEROVITZ, even though FEYGENBERG and LEIZEROVITZ

12   never gave LIOUDKOVSKI authority to do so and were unaware of the deals he was making.

13   Cross-Complainants are informed and believe and thereon allege that in order to obtain funds from

14   third parties, LIOUDKOVSKI promised them first-position liens on the Property.  LIOUDKOVSKI

15   obtained an unknown amount of funds from the third parties in this manner.  Cross-Complainants

16   are informed and believe and thereon allege that one of the third parties that provided funds to LEV

17   based upon LIOUDKOVSKI's promise of a first-position lien against the Property was a relative of

18   LISITSA and that the LISITSA PARTIES were aware of these Secret Loans obtained by

19   LIOUDKOVSKI for LEV.

20        12.    LEV, FEYGENBERG and LEIZEROVITZ acquired the defaulted Promissory Note

21   on or about December 31, 2018.  During the next month, the owner of the Property engaged in legal

22   actions in both the Superior Court and the Bankruptcy Court to try to derail the foreclosure.

23   LISITSA represented Lev, FEYGENBERG and LEIZEROVITZ as counsel of record in these legal

24   proceedings .  Since they were principally acting as lenders, FEYGENBERG and LEIZEROVITZ

25   never agreed, expected or were told that they would be responsible for any attorneys fees or legal

26   costs incurred in order to proceed with the foreclosure.  Nonetheless, they were charged in excess of

27   $24,000 for their share of Defendants' attorneys fees for these court proceedings.  FEYGENBERG

28   and LEIZEROVITZ  reluctantly accepted that they were being charged for the LISITSA PARTIES'

4

1  attorneys fees based upon the understanding and expectation that, as lenders, they would ultimately

2  be reimbursed for costs and expenses related to their loan when the loan was paid-off.

3       13.    The foreclosure sale of the Property occurred on January 30, 2019.  Although the

4  Property was sold based upon a credit bid of the amount due on the Promissory Note, the sale did

5  not proceed as agreed by FEYGENBERG, LEIZEROVITZ and LEV.  Despite the agreement that

6  only LEV would take title to the Property and that FEYGENBERG and LEIZEROVITZ would be

7  provided with a first-position Deed of Trust as soon as the foreclosure occurred, the Trustee

8  conducting the foreclosure sale under the direction and supervision of the LEV PARTIES and

9  LISITSA, issued a Trustee's Deed naming LEV,  FEYGENBERG and LEIZEROVITZ jointly as

10  owners of the Property.  Realizing this mistake, LISITSA prepared a Grant Deed to divest

11  FEYGENBERG and LEIZEROVITZ of ownership of the Property and a Deed of Trust to secure

12  FEYGENBERG's and LEIZEROVITZ's loan as a lien against the Property.  (LEIZEROVITZ

13  assigned his loan to SENSIBLE, his business entity, which became a beneficiary of the Deed of

14  Trust with FEYGENBERG which the Deed of Trust was prepared by LISITSA.)  These documents

15  were executed on January 31, 2019, just one day after the Trustee's sale.  However, the LISITSA

16  PARTIES, who had possession of these instruments, acting at the direction and in concert with the

17  LEV Parties, did not record them until March 22, 2019, after many demands from Cross-

18  Complainants for copies of the recorded documents.

19       14.    In early March 2019, before the Grant Deed and Deed of Trust were recorded to try

20  to conform to the parties' agreement, LEV acting through the LISITSA PARTIES asked Cross-

21  Complainants to provide a pay-off demand for their loan in connection with an escrow for a

22  purported sale of the Property.  In connection with that transaction, Cross-Complainants were told

23  that there was a "problem" with the title to the Property.  That "problem" turned out to be a

24  judgment lien against FEYGENBERG for an old lawsuit that FEYGENBERG believed had been

25  settled and dismissed.  Unbeknownst to FEYGENBERG, the claims against him were not dismissed

26  and a judgment was entered against him for $169,855.38.  This "problem" would have never arisen

27  if the foreclosure on the Property had been handled as agreed where FEYGENBERG would never

28  have been named as a title holder of the Property.  Based upon this "problem", LEV, through its

1   (Bankr. C.D. Cal. 2016).  As to proceeding requiring factual findings, this Court may

2   adjudicate those claims through the submission of proposed findings of fact and

3   conclusions of law to the District Court.  *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S.

4   25, 31, 134 S.Ct. 2165, 2170, 189 L.Ed.2d 83 (2014).  This Court should retain

5   jurisdiction of this action and not remand it to State Court.

6

7   **V.    CONCLUSION.**

8          The claims that comprise this action are interrelated with core bankruptcy matters

9   – they impact the determination of claims by creditors and the property of the estate.  The

10  Court clearly has jurisdiction of the claims and they will need to be adjudicated in

11  connection with the administration of the bankruptcy.  The State Court does not provide a

12  reasonable alternative for this adjudication due to the substantial delay in State Court

13  litigation exacerbated by the Covid pandemic.  This Court should retain jurisdiction of

14  this action and refrain from remanding it to State Court.

15

16  DATED: July 29, 2020.                    BURGEE & ABRAMOFF P.C.

17

18                                           By:_____/s/ John G. Burgee_____
                                                 JOHN G. BURGEE
19                                           Attorneys for Defendants Ruvin Feygenberg,
                                             Michael Leizerovitz, and Sensible Consulting
20                                           and Management, Inc.

21

22

23

24

25

26

27

28

agents, has demanded that SENSIBLE, which had become the sole holder of the loan initially made by FEYGENBERG and LEIZEROVITZ, agree to a payoff of the loan that is reduced by the amount of the judgment.  When SENSIBLE refused to do so, LEV brought this  action against Cross-Complainants seeking compensation not only for the judgment, but also other for other undisclosed liens against the Property that they supposedly caused.  These claims are based in part upon the execution of a Grant Deed by LEIZEROVITZ and FEYGENBERG to convey the interest that they improperly had in the Property to LEV.

15.    In October 2019, Cross-Complainants first learned about the Secret Loans when they received notice of a lawsuit brought by Mariya Ayzenberg.  Ms. Ayzenberg alleged that she made a $300,000 loan to LEV and Cross-Defendants, and that her loan was supposed to be secured by a Deed of Trust for the Property.  She recorded a Notice of Pendency of Action against the Property clouding title.  Prior to this time, Cross-Complainants had no idea that Ms. Ayzenberg had purportedly loaned any money to LEV related to the acquisition of the Property.

16.    In December 2019, Cross-Complainants learned about another Secret Loan when they received notice of another lawsuit brought against LEV and them, alleging that they borrowed $119,000 from an undisclosed principal for the acquisition of the Property. (The lawsuit was brought by FR LLC as an assignee of the Secret Loan.)  The plaintiff alleged that the loan was supposed to be secured by a first position Deed of Trust for the Property and, according to the court docket, the plaintiff recorded a Notice of Pending Action.  Prior to this time, Cross-Complainants was not aware of this purported loan to LEV related to the acquisition of the Property.

## FIRST CAUSE OF ACTION

(By All Cross-Complainants for Breach of Contract against the LEV PARTIES)

17.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

18.    The CONTRACT is a written contract between the parties.  (Due to a confidentiality provision in the CONTRACT, Cross-Complainants are not attaching the documents as an exhibit, but have pled the essential relevant terms.)  SENSIBLE is a successor-in-interest to the benefits of LEIZEROVITZ and FEYGENBERG under the CONTRACT.

6

19.     Cross-Complainants performed and were ready, willing and able to perform all obligations required of them pursuant to the CONTRACT except as have been waived, excused or rendered impossible by Cross-Defendants and their conduct.

20.     Cross-Defendants breached the contract by (a) failing to contribute $1,022,500 of their own funds (not borrowed funds) to the acquisition of the Property, (b) not causing the Trustee's foreclosure sale of the Property to be conducted as agreed where title to the Property was vested solely in LEV and Cross-Complainants being provided immediately with a first position Deed of Trust; and ( c) based upon promises made in connection with obtaining the Secret Loans, potentially giving third parties lien rights in the Property superior to those of Cross-Defendants.

21.     Based upon Cross-Defendants' breach of contract, Cross-Complainants have sustained damages in terms of the judgment against FEYGENBERG that has now become a lien against the Property and the claims, clouds on title, and prospective defense costs and liability with respect to the Secret Loans.  Cross-Complainants believes that their damages may exceed $600,000, subject to proof at the time of trial.

## SECOND CAUSE OF ACTION

(By all Cross-Complaints for Breach of Fiduciary Duty

Against the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

22.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

23.     The LEV PARTIES were Cross-Complainants' business partners in connection with the transaction memorialized by the CONTRACT.  Further, the LISITSA PARTIES acted a counsel for Cross-Complainants.  Consequently, Cross-Defendants and each of them owed a fiduciary duty of care to Cross-Complainants.

24.     Defendants breached their fiduciary duty to Cross-Complainants by, among other things, arranging and obtaining the Secret Loans, failing to disclose the Secret Loans to Cross-Complainants, and conducting the foreclosure sale of the Property so as to convey title, in part, to FEYGENBERG and LEIZEROVITZ.

//

25.     As the result of Cross-Defendants' breach of fiduciary duty, Cross-Complainants have sustained damages which are believed to be in excess of $600,000.

26.     Cross-Defendants' breach of fiduciary duty was committed with fraud and malice as those terms are defined in Civil Code Section 3294.    Cross-Defendants knew that the Secret Loans were contrary to promises and representations made to Cross-Complainants as well as the CONTRACT, and that Cross-Complainants would sustain harm by virtue of the Secret Loans. Further, Cross-Defendants had a duty to disclose the Secret Loans to Cross-Complainants but failed to do so.  Cross-Complainants are therefore entitled to an award of exemplary damages against Cross-Defendants in an amount deemed appropriate by the trier of fact.

_____**THIRD CAUSE OF ACTION**

(By All Cross-Complainants for Concealment Against

the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

27.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

28.     By The LEV PARTIES were Cross-Complainants' business partners in connection with the transaction memorialized by the CONTRACT.  Further, the LISITSA PARTIES acted a counsel for Cross-Complainants.  By virtue of these relationships, Cross-Defendants and each of them had a duty to disclose the Secret Loans to Cross-Complainants.  However, Cross-Defendants failed to disclose the Secret Loans to Cross-Complainants, purposefully concealing their existence, in order to deceive Cross-Complainants so that they would not know that these loans existed.

29.     Based upon Cross-Defendants' concealment of the Secret Loans, Cross-Complainants were unaware of those Loans and the promises that the LEV PARTIES made to third parties, supposedly on Cross-Complainants' behalf.  Cross-Complainants would not have proceeded with the business transaction with LEV had they known of the Secret Loans.

30.     Cross-Complainants have been damaged by Cross-Defendants' deceit in terms of the claims made by third parties that loaned LEV money pursuant to the Secret Loans which include their placing clouds on title, and prospective defense costs and liability.  Cross-Complainants believes that their damages may exceed $300,000, subject to proof at the time of trial.

8

31.    Cross-Defendants' concealment of the Secret Loans was fraudulent and committed with malice as those terms are defined in Civil Code Section 3294.  Cross-Defendants knew that the Secret Loans were contrary to promises and representations made to Cross-Complainants as well as the CONTRACT, and that Cross-Complainants would sustain harm by virtue of the Secret Loans.  Further, Cross-Defendants had a duty to disclose the Secret Loans to Cross-Complainants but failed to do so.  Cross-Complainants are therefore entitled to an award of exemplary damages against Cross-Defendants in an amount deemed appropriate by the trier of fact.

**FOURTH CAUSE OF ACTION**

(By All Cross-Complainants for Indemnity Against

the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

32.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

33.    The third parties who made Secret Loans to LEV have brought lawsuits against Cross-Complainants for the breach of such loans.  Cross-Complainants have been named as defendants in these actions based upon the unauthorized and fraudulent representations and promises by Cross-Defendants that they were acting on behalf of Cross-Complainants.  The claims against Cross-Complainants in these actions are thus wholly based upon the misconduct of Cross-Defendants.  Cross-Complainants are therefore entitled to indemnity from Cross-Defendants for any cost and expense in opposing the lawsuits based upon the Secret Loans as well as for any settlement or judgment with respect to those claims that detrimentally impact Cross-Complainants.

**FIFTH CAUSE OF ACTION**

(By All Cross-Complainants for Declaratory Relief Against

the LEV PARTIES, the LISITSA PARTIES and ROES 21 to 30)

34.    Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 16, inclusive, of this Cross-Complaint.

35.    An actual controversy exists among the parties concerning their respective rights and interests in connection with respect to the satisfaction of the judgment against FEYGENBERG and the responsibility for the Secret Loans.  Cross-Complainants contend and Cross-Defendants dispute

9

that: (a) Cross-Complainants have no responsibility to satisfy the judgment against FEYGENBERG;

(b) SENSIBLE is entitled to payment of all principal, interest and any other fees and charges on the

loan it holds that is secured by the Property without setoff for the judgment against FEYGENBERG;

(c) Cross-Defendants are solely responsible for any and all costs and liabilities arising from the

Secret Loans; and (d) Cross-Complainants are entitled to indemnity from Cross-Defendants for the

claims asserted by the third parties based upon the Secret Loans, including the attorneys fees and

costs incurred by Cross-Complainants in defending any action related thereto.  Consequently, a

judicial determination of the rights and interest of the parties with respect to these matters is

necessary and appropriate.

**GENERAL ALLEGATIONS**

**AS TO ADDITIONAL CLAIMS AGAINST CROSS-DEFENDANTS BY LEIZEROVITZ**

36.    Coachella Vineyard Luxury RV Park, LLC ("RV") owned a real property in

Coachella, California which is vacant land that is being developed as a luxury RV park (the "RV

Property") .  The RV Property is legally described as follows:

> LOT 71 OF TRACT 30117-1, IN THE CITY OF COACHELLA, COUNTY OF
> RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN
> BOOK 331, PAGES 71 AND 78, INCLUSIVE OF MAPS IN THE OFFICE OF THE
> COUNTY RECORDER OF SAID COUNTY.

> EXCEPTING THEREFROM 50% INTEREST IN AND TO ALL OIL, GAS AND
> OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS
> RESERVED BY CANAL WATER LANDOWNERS, A CALIFORNIA
> CORPORATION IN DEED RECORDED MAY 27, 1954 IN BOOK 1592, PAGE
> 201 OF OFFICIAL RECORDS.

> EXCEPT THEREFROM THAT PORTION WHICH FALL WITHIN THE
> BOUNDARIES OF TRACT 328610-1, AS SHOWN ON THE SUBDIVISION MAP
> FILED ON MAY 2,2006 IN BOOK 401 OF MAPS, PAGES 79 TO 88 INCLUSIVE
> IN THE OFFICE OF THE RIVERSIDE COUNTY RECORDER.

> APN: 601-620-012-0.

37.    Prior to July 2018, LEIZEROVITZ held certain Deeds of Trust securing loans he had

made to RV and affiliated entities.  Pursuant to an agreement with RV and others, LEIZEROVITZ

agreed to release his Deeds of Trust on the RV Property to allow RV to obtain new financing for the

development of that property.  The new financing including a loan made by LEV on or about July

31, 2018, purporting to be in the principal amount of $2,000,000 (the "LEV Loan").  The LEV Loan

10

was secured by a first-position Deed of Trust on the RV Property (the "LEV Deed of Trust") which was recorded on August 7, 2018.

38.    In consideration for releasing his Deeds of Trust against the RV Property, LEIZEROVITZ received, among other things, an unsecured Promissory Note from RV in the amount of $400,000 (the "Unsecured Note") and a Promissory Note (the "Secured Note") which was secured by a Deed of Trust against the RV Property in the amount of $500,000 (the "RV Deed of Trust").

39.    In February 2019, RV agreed that the Unsecured Note would be secured by the RV Deed of Trust as an extension of credit.  Additionally, LEIZEROVITZ agreed to provide RV with a further loan of $50,000 as an extension of the loan secured by the RV Deed of Trust.  The total amount secured by the RV Deed of Trust was therefore $950,000.  The RV Deed of Trust was recorded on February 7, 2019 and constituted a third-position lien on the RV Property.

40.    On June 17, 2019, LEV declared the LEV Loan to be in default.  The Notice of Default was prepared by the RPT PARTIES as the successor Trustee for the LEV Deed of Trust and recorded on June 19, 2019.  The Notice of Default declared that the amount due on the LEV Loan was $2,450,244.27.  The asserted amount of the default was disputed by RV.

41.    LEV recorded a Notice of Sale in connection with its foreclosure on the RV Property on September 19, 2019.   The sale was set for October 15, 2018.

42.    Although LEV ultimately reduced its payoff demand for its loan, RV continued to dispute the amount demanded by LEV and brought a legal action in the Riverside Superior Court seeking a restraining order and preliminary injunction to prevent LEV from completing the foreclosure with the excessive payoff demand (*GA&TV Inc. v. Lev Investments, LLC*, Case Number RIC 1905065) (the "Riverside Acton").  The Riverside Court granted the restraining order on October 10, 2019.  By stipulation of the parties, the hearing on the preliminary injunction was heard on November 6, 2019.  Although the Riverside Court agreed that the Notice of Default and the original demand by LEV was excessive, the Court denied the preliminary injunction sought by RV.  Nonetheless, the Riverside Court specifically stated that the foreclosure sale would need to be based upon LEV's reduced demand.

1
2
3                                EXHIBIT 2
4
5                         CROSS-COMPLAINT
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

43.     The expiration of the temporary retraining order and the Court's denial of the preliminary injunction was on November 6, 2019.  Civil Code 2924g(d) imposes an automatic seven day stay upon a foreclosure sale after the expiration of a temporary retraining order and denial of a preliminary injunction, unless there is an express court order waiving the provisions of that statute.  Here, there was no waiver of the stay by the Court.  Hence, pursuant to Civil Code 2924g(d), the earliest date that LEV could proceed with its foreclosure sale of the RV Property was November 13, 2019.

44.     LEIZEROVITZ was following LEV's foreclosure and the Riverside Action as a junior lien holder.   LEIZEROVITZ was interested in the foreclosure and in possibly acquiring the RV Property at the foreclosure sale in order to protect his financial interest in the property by virtue of the RV Deed of Trust.  However, on or about November 12, 2019, LEIZEROVITZ learned that the RPT PARTIES conducted the foreclosure for LEV on November 7, 2019.  The sale was therefore in violation of Civil Code 2924g(d) and LEIZEROVITZ was denied the opportunity to attend the foreclosure and prospectively purchase the RV Property.

45.     Furthermore, the Trustee's Deed from LEV's foreclosure on the RV Property indicates that the foreclosure proceeded based upon an unpaid debt of $2,570,949.36 and that the amount paid by LEV as a credit bid was $2,500,000.00.  This amount appears to be in excess of the amount that the Riverside Court ruled was appropriate so that the foreclosure was in violation of this Court's Order.  In this regard, it is questionable that LEV could have submitted a credit bid for $2,500,000 since that appears to be more than the Riverside Court determined was owed on the loan.

46.     Cross-Complainants are informed and believe and thereon allege that RV demanded that the improper foreclosure sale of the RV Property be set aside.  However, Cross-Defendants have failed to cancel the Trustee's Deed or confirm RV's title to the Property which would restore the RV Deed of Trust and LEIZEROVITZ's secured interest in the property.  As a result, LEIZEROVITZ has lost his security interest in the RV Property which devalues his loans to RV and denies him the opportunity to foreclose on the RV Property if the loans are not repaid.

//

**SIXTH CAUSE OF ACTION**

(By LEIZEROVITZ for Quiet Title against the LEV PARTIES)

47.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

48.     The foreclosure sale of the RV Property was in violation of law and void based upon the failure of consideration.  The foreclosure was thus ineffective to divest RV of title to the RV Property and extinguish the RV Deed of Trust.

49.     Cross-Defendants claim and assert that LEV is the owner of the RV Property and that the RV Deed of Trust was extinguished pursuant to the improper and unlawful foreclosure sale. Cross-Defendants' claim of title to the RV Property is adverse to the claim of LEIZEROVITZ that the RV Deed of Trust remains a valid encumbrance of title to the property.

50.     LEIZEROVITZ seeks to quiet title as of November 7, 2019 (the date of the unlawful foreclosure) as to the RV Deed of Trust as a valid and existing encumbrance of title to the RV Property free and clear of any liens Cross-Defendants caused to become attached to the property since that date.

51.     LEIZEROVITZ has and will sustain incidental damages, subject to proof at the time of trial.

**SEVENTH CAUSE OF ACTION**

(By LEIZEROVITZ for Cancellation of Instruments

against the LEV PARTIES, the RPT PARTIES and ROES 31 to 40)

52.     Cross-Complainants incorporate here by reference all of the allegations set forth in paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

53.     The RPT PARTIES' foreclosure sale of the RV Property was in violation of law and void based upon the failure of consideration.  The RPT PARTIES therefore did not have legal authority to execute the Trustee's Deed purported conveying title to the RV Property to LEV and the Trustee's Deed is a void instrument.

54.     LEIZEROVITZ has and will sustain serious injury and pecuniary loss based upon LEV's claims of title to the RV Property pursuant to the invalid Trustee's Deed.  Among other

13

things, LEIZEROVITZ has lost security for loans totaling $950,000 in principal.  The Court should

therefore declare that the Trustee's Deed is canceled and of no force and effect.

55.    LEIZEROVITZ has and will sustain incidental damages, subject to proof at the time

of trial.

### EIGHTH CAUSE OF ACTION

(By LEIZEROVITZ for Wrongful Foreclosure

against the LEV PARTIES, the RPT PARTIES and ROES 31 to 40)

56.    Cross-Complainants incorporate here by reference all of the allegations set forth in

paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

57.    As describe herein, Cross-Defendants caused an illegal foreclosure sale of the RV

Property.  The foreclosure was in violation of Civil Code 2924g(d) and this Court's specific order.

The sale and the resulting Trustee's Deed are therefore void.

58.    LEIZEROVITZ was following LEV's foreclosure and the Riverside Action as a

junior lien holder.   LEIZEROVITZ was interested in possibly acquiring the RV Property at the

foreclosure sale in order to protect his financial interest in the property by virtue of the RV Deed of

Trust.  However, LEIZEROVITZ was preempting from monitoring the foreclosure and

prospectively acquiring the RV Property by Cross-Defendants' action in surreptitiously proceeding

with the trustee's sale before it was legal to do so.

59.    LEIZEROVITZ has been substantially damaged based upon the loss of the RV

Property as security for his loans.  Without the RV Property as security, LEIZEROVITZ expects to

have difficulty in obtaining repayment and his damages could be in excess of $1,000,000.

60.    Even if the Court restores RV's title to the property and LEIZEROVITZ's Deed of

Trust, LEIZEROVITZ has and will sustain incidental damages, subject to proof at the time of trial.

### NINTH CAUSE OF ACTION

(By LEIZEROVITZ for Declaratory and Injunctive Relief

against the LEV PARTIES, the RPT PARTIES and ROES 31 to 40)

61.    Cross-Complainants incorporate here by reference all of the allegations set forth in

paragraphs 1 through 9, and 36 through 46, inclusive, of this Cross-Complaint.

CROSS-COMPLAINT

62.     A current dispute exists between the parties as to the invalidity of LEV's foreclosure on the RV Property and whether LEIZEROVITZ's Deed of Trust was extinguished. LEIZEROVITZ contends that Cross-Defendants' non-judicial foreclosure sale of the RV Property is void and that the RV Deed of Trust remains a valid encumbrance of the RV Property.  Cross-Defendants deny and dispute these contentions.  LEIZEROVITZ therefore seeks a judicial determination of this controversy which is necessary and appropriate to determine ownership of the RV Property and prevent Cross-Defendants from depriving LEIZEROVITZ of security for his loans to RV and its affiliates.

63.     LEIZEROVITZ is informed and believes and thereon alleges that Cross-Defendants plan to encumber, hypothecate, transfer, and/or sell the RV Property.  Such action will potentially prevent LEIZEROVITZ from obtaining the relief sought through this action and cause irreparable damage to LEIZEROVITZ.  LEIZEROVITZ is owed over $1,000,000 that is supposed to be secured by the RV Property.  The Court should therefore issue a temporary restraining order and preliminary injunction enjoining Cross-Defendants from encumbering, hypothecating, transferring, and/or selling the RV Property during the pendency of this action as well as a permanent injunction once the parties' rights are determined by the Court.

**PRAYER**

WHEREFORE, Cross-Complainants pray for judgment against Cross-Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION:**

1.     For compensatory damages of $600,000.00, according to proof;

**ON THE SECOND CAUSE OF ACTION:**

2.     For compensatory damages of $600,000.00, according to proof;

3.     For punitive damages;

**ON THE THIRD CAUSE OF ACTION:**

4.     For compensatory damages of $300,000.00, according to proof;

5.     For punitive damages;

//

15

CROSS-COMPLAINT

**ON THE FOURTH OF ACTION:**

6.    For an order that Cross-Defendants indemnify Cross-Complainants for any cost and expense in opposing the lawsuits based upon the Secret Loans as well as for any settlement or judgment with respect to those claims that detrimentally impact Cross-Complainants;

**ON THE FIFTH CAUSE OF ACTION:**

7.    For a judicial determination and declaration that: (a) Cross-Complainants have no responsibility to satisfy the judgment against FEYGENBERG; (b) SENSIBLE is entitled to payment of all principal, interest and any other fees and charges on the loan it holds that is secured by the Property without setoff for the judgment against FEYGENBERG; (c) Cross-Defendants are solely responsible for any and all costs and liabilities arising from the Secret Loans; and (d) Cross-Complainants are entitled to indemnity from Cross-Defendants for the claims asserted by the third parties based upon the Secret Loans, including the attorneys fees and costs incurred by Cross-Complainants in defending any action related thereto;

**ON THE SIXTH CAUSE OF ACTION:**

8.    For a judgment quieting LEIZEROVITZ'S Deed of Trust to the RV Property senior to any liens created by LEV since November 7, 2019;

9.    For incidental damages subject to proof at the time of trial;

**ON THE SEVENTH CAUSE OF ACTION:**

10.    For cancellation of the Trustee's Deed purporting to convey title to the RV Property to LEV;

11.    For incidental damages subject to proof at the time of trial;

**ON THE EIGHTH CAUSE OF ACTION:**

12.    For compensatory damages of $1,000,000.00, according to proof;

**ON THE NINTH CAUSE OF ACTION:**

13.    For a permanent injunction enjoining Cross-Defendants from encumbering, hypothecating, transferring, and/or selling the RV Property;

14.    For a temporary restraining order and preliminary injunction enjoining Cross-Defendants from encumbering, hypothecating, transferring, and/or selling the RV Property during

16

1  the pendency of this action;

2  **ON ALL CAUSES OF ACTION:**

3      15.    For prejudgment interest pursuant to Civil Code Sections 3287 and/or 3288;

4      16.    For costs of suit; and

5      17.    For such further relief as the Court deems just and proper.

6

7  DATED: March 20, 2020.                    BURGEE & ABRAMOFF P.C.

8
                                           By:_____/s/ John G. Burgee_____
9                                               JOHN G. BURGEE
                                           Attorneys for Defendants and Cross-Complainants
10                                         RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ
                                           and SENSIBLE CONSULTING AND
11                                         MANAGEMENT, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 20501 Ventura Boulevard, Woodland Hills, California 91364.

      On March 20, 2020, I served the foregoing document described as: CROSS-COMPLAINT OF RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ AND SENSIBLE CONSULTING AND MANAGEMENT, INC. FOR DAMAGES AND EQUITABLE RELIEF on the interested parties in this action:

/X/    by placing /_/ the original /X/ a true copy thereof enclosed in sealed envelopes addressed as follows:

James R. Felton, Esq.
G&B Law, LLP
16000 Ventura Blvd., Suite 1000
Encino, California 91436-2730
E:  jfelton@gblawllp.com
Fax:  818-986-6534

[X]    BY MAIL

    [X]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Woodland Hills, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **(BY PERSONAL SERVICE) I delivered such envelope by hand to the office/home of the addressee.

Executed March 20, 2020, at Woodland Hills, California.

/X/    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

   John Burgee                   /s/ John G. Burgee
Type or Print Name            Signature

CROSS-COMPLAINT

1

2

3                                          EXHIBIT 3

4

5                        SUPERIOR COURT ORDER OF JULY 10, 2020

6                               RE: TRIAL SCHEDULING

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

**FILED**
Superior Court of California
County of Los Angeles

JUL 1 0 2020

Sherri R. Carter, Executive Officer/Clerk

By _Rizalinda Mina_ , Deputy
Rizalinda Mina

5        SUPERIOR COURT OF THE STATE OF CALIFORNIA

6            FOR THE COUNTY OF LOS ANGELES

7

8   ADMINISTRATIVE ORDER OF THE          **GENERAL ORDER**
    PRESIDING JUDGE RE COVID-19
9   PANDEMIC

10

11

12        As the COVID-19 pandemic continues unabated, the Superior Court of California, County of

13  Los Angeles (Court or LASC) continues to implement measures designed to protect the public it

14  serves and those whose livelihood depends on the Court while safeguarding the rights of all

15  participants in court proceedings. The Court must continually evaluate the balance between those twin

16  concerns as the novel coronavirus contagion rate in Los Angeles County increases and Public Health

17  authorities provide more guidance about how to slow its spread.

18        To that end, the Court again sought and obtained authority from Chief Justice Tani Cantil-

19  Sakauye to issue judicial emergency orders under Government Code section 68115 continuing certain

20  cases.

21

22        **ACCORDINGLY, THE COURT HEREBY FINDS, AND ORDERS AS FOLLOWS**:

23  **1.  Courthouse Access & Remote Appearances:**

24        a.  In the interest of safeguarding the well-being of court users and enforcing social

25            distancing, persons seeking services from the Clerk's Office, court support services,

26            and/or the Self-Help Center must have a prescheduled appointment. Appointments

27            may be made the same day for persons seeking restraining orders who have

28

completed paperwork and arrive at the courthouse no later than 3:00 p.m. For
telephone or video assistance, or to schedule an appointment, the telephone number
for each courthouse is listed at the courthouse entry and posted on the Court's
website, www.lacourt.org.

b.  Access to LASC proceedings shall be limited to the judicial officer presiding, Court
personnel, parties, counsel, witnesses, and those members of the public (including
news reporters and news media representatives) as can be accommodated in the
designated courtroom while enforcing social distancing. The determination of
courtroom capacity shall be made by the Judge or Commissioner presiding in the
courtroom.

c.  In furtherance of Executive Order N-33-20, paragraph 4, subpart (b), and as required
by the California Rules of Court, Emergency Rule 12, the Court orders all parties
who use e-filing to accept electronic service, except in those circumstances when
personal service is required by law or where any of the parties are self-represented.

d.  Parties and counsel are strongly urged to make use of technology for remote
appearances, whenever possible.

e.  Judicial officers retain the discretion to require the use of technology for remote
appearances for the duration of this general order.

2.  **Face Coverings and Social Distancing:**

a.  In accordance with General Order No. 2020-GEN-016-01 issued on July 6, 2020, all
persons are required to wear face coverings over their nose and mouth while they are
in a courthouse. Persons whose disabilities preclude them from wearing face
coverings compliant with the California Department of Public Health Guidance
Concerning the Use of Face Coverings issued on June 18, 2020, are urged to seek an
accommodation under Rule 1.100 of the California Rules of Court in advance of their
appearance.

ADMINISTRATIVE ORDER OF THE PRESIDING JUDGE RE COVID-19 PANDEMIC

b.  To enforce social distancing, each court shall schedule only the number of matters during each session that it can conduct while enforcing social distancing requirements.

3.  **Continuances:**

a.  <u>Criminal:</u>

i.  The Court extends the time period provided under section 825 of the Penal Code within which a defendant charged with a felony offense must be taken before a magistrate from 48 hours to not more than seven (7) days, applicable only to cases in which the statutory deadline otherwise would expire from **July 10, 2020 to August 8, 2020**, inclusive.

ii.  Pursuant to the authority granted by the March 30, 2020 Statewide Emergency Order by Tani G. Cantil-Sakauye, Chief Justice of California and Chair of the Judicial Council which the Court implemented in its General Order No. 2020-GEN-07-00 issued on April 2, 2020, and until further notice, the Court extends the time provided by section 859b of the Penal Code for the holding of a preliminary examination and the defendant's right to release from 10 court days to not more than 30 court days.

iii.  The Court extends the time period provided in section 1382 of the Penal Code for the holding of a criminal trial by not more than 30 days, applicable only to cases in which the statutory deadline otherwise would expire from **July 15, 2020** to **September 14, 2020,** inclusive.

iv.  The Court extends by 90 court days the time to submit status reports and progress reports for defendants for whom a status report or progress report was due from **July 10, 2020 to August 8, 2020**, inclusive. The court shall provide notice of when the new proceeding will be held.

ADMINISTRATIVE ORDER OF THE PRESIDING JUDGE RE COVID-19 PANDEMIC

v.   The Court extends by 90 court days, unless statutorily required otherwise, the time to hold misdemeanor post-arraignment proceedings in which the defendant is out of custody that would otherwise be set from **July 10, 2020 to August 8, 2020**, inclusive.

b.   Juvenile Dependency and Juvenile Delinquency:

i.   The Court extends the time periods provided in section 313 of the Welfare and Institutions Code within which a minor taken into custody pending dependency proceedings must be released from custody to not more than **seven (7) days**, applicable only to minors for whom the statutory deadline would otherwise expire from **July 10, 2020 to August 8, 2020**, inclusive.

ii.   The Court extends the time periods provided in section 315 of the Welfare and Institutions Code within which a minor taken into custody pending dependency proceedings must be given a detention hearing to not more than **seven (7) days**, applicable only to minors for whom the statutory deadline would otherwise expire from **July 10, 2020 to August 8, 2020**, inclusive.

iii.   The Court extends the time periods provided in sections 632 and 637 of the Welfare and Institutions Code within which a minor taken into custody pending wardship proceedings and charged with a felony offense must be given a detention hearing or rehearing to not more than **seven (7) days**, applicable only to minors for whom the statutory deadline would otherwise expire from **July 10, 2020 to August 8, 2020**, inclusive.

iv.   The Court extends the time period provided in section 334 of the Welfare and Institutions Code within which a hearing on a juvenile dependency petition must be held by not more than **fifteen (15) days**, applicable only to minors for whom the statutory deadline would otherwise expire from **July 10, 2020 to August 8, 2020**, inclusive.

v.    The Court extends the time period provided in section 657 of the Welfare and Institutions Code within which a hearing on a wardship petition for a minor charged with a felony offense must be held by not more than **fifteen (15) days**, applicable only to minors for whom the statutory deadline otherwise would expire from **July 10, 2020 to August 8, 2020**, inclusive.

c.    Unlawful Detainer:

The Court deems **July 10, 2020 to August 8, 2020**, inclusive, a holiday/holidays for purposes of computing time under Code of Civil Procedure section 1167. The Court finds good cause to continue all unlawful detainer trials without a determination pursuant to Code of Civil Procedure section 1170.5(c).

d.    Small Claims:

The Court deems **July 10, 2020 to August 8, 2020**, inclusive, a holiday/holidays for purposes of computing the time under Code of Civil Procedure section 116.330(a) (requires a small claims matter to be scheduled for hearing no earlier than 20 days but not more than 70 days from the date of the order directing the parties to appear at the hearing).

e.    Traffic and Infractions:

All traffic and infraction arraignments and trials scheduled from **July 10, 2020 to August 8, 2020**, inclusive, are continued. The parties shall receive notice of the date on which the hearing shall be set.

f.    Trials:

i.    All non-jury trials, unless statutorily required otherwise, including in Civil, Criminal, Family Law, Juvenile Dependency, Probate, and Traffic, scheduled from **July 10, 2020 to August 8, 2020**, inclusive, are continued until further notice. All pre-trial dates for trials that are continued pursuant to paragraph (f) are also continued consistent with the new trial date.

ii.     Except as noted below, Civil non-jury trials shall not be set to commence before **November 16, 2020**.

    1.     The Court plans to set certain Unlawful Detainer non-jury trials, and those non-jury trials in preference cases that can be tried in compliance with social distancing protocols, to commence on or after **October 5, 2020**.

iii.    All Civil jury trials, including Unlawful Detainer trials, scheduled from **July 10, 2020 to August 8, 2020**, inclusive, are continued. The parties shall be notified of the continued trial date by the court. All pre-trial dates for trials that are continued pursuant to this paragraph are also continued consistent with the new trial date.

    1.     Except as noted below, the Court will not set any Civil jury trials to commence before January 2021.

        a.     Certain Unlawful Detainer jury trials will be set to commence on or after **October 5, 2020**.

**THIS ORDER IS EFFECTIVE IMMEDIATELY AND WILL REMAIN IN EFFECT UNTIL AUGUST 8, 2020, AND MAY BE AMENDED AS CIRCUMSTANCES REQUIRE. GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED.**

DATED: July 10, 2020

KEVIN C. BRAZILE
Presiding Judge

ADMINISTRATIVE ORDER OF THE PRESIDING JUDGE RE COVID-19 PANDEMIC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

20501 Ventura Boulevard, Suite 262, Woodland Hills, CA 91364

A true and correct copy of the foregoing document entitled (*specify*): <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>
<u>OF DEFENDANTS/ CROSS-COMPLAINANTS RUVIN FEYGENBERG, MICHAEL LEIZEROVITZ, AND SENSIBLE</u>
<u>CONSULTING AND MANAGEMENT, INC. IN OPPOSITION TO REMAND; DECLARATION OF JOHN G. BURGEE</u>

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>07/29/2020</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov; Michael Shemtoub michael@lexingtonlg.com
Caroline Renee Djang (TR) caroline.djang@bbklaw.com; sansanee.wells@bbklaw.com; wilma.escalante@bbklaw.com
David A Tilem davidtilem@tilemlaw.com, DianaChau@tilemlaw.com, JoanFidelson@ecf.inforuptcy.com
David B Golubchik dbg@lnbyb.com, stephanie@lnbyb.com; Juliet Y Oh jyo@lnbrb.com, jyo@lnbrb.com

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>07/29/2020</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Victoria Kaufman, Judge, US Bankruptcy Court, 21041 Burbank Blvd., Suite 354, Woodland Hills, CA 91367

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>07/29/2020</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| <u>07/29/2020</u> | <u>John G. Burgee</u> | <u>/s/ John G. Burgee</u> |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                     **F 9013-3.1.PROOF.SERVICE**